475 A.2d 796

**Charles R. HESS**

v.

**Alverta A. HESS, Appellant.**

Superior Court of Pennsylvania.

Submitted March 9, 1983.

Filed April 13, 1984.

280

John W. Purcell, Jr., Harrisburg, for appellant.

John Stewart Davidson, Hershey, for appellee.

Before WICKERSHAM, BECK and MONTEMURO, JJ.

BECK, Judge:

In this appeal from the final decree filed December 7, 1981, denying appellant's exceptions and approving the Special Master's report in a divorce action, appellant Alverta A. Hess claims that she was erroneously denied alimony and counsel fees. Appellee Charles R. Hess initiated the complaint in divorce in July 1980. Alverta answered the complaint with a counterclaim for alimony, alimony pendente lite, counsel fees, and equitable distribution of marital property.

The final divorce decree was entered October 1980, with the court reserving jurisdiction over economic matters. At a Special Master's hearing in June 1981 Alverta waived her claim to equitable distribution and proceeded on her claim for alimony, alimony pendente lite, and counsel fees. The Special Master's report denied alimony, made no mention of alimony pendente lite,[1] and recommended that fees and costs be divided between the parties. The Court of Common Pleas, Dauphin County, accepted the report and overruled the exceptions. Alverta claims on appeal that the Master erred in the statutory interpretation of 23 P.S. § 501(a), (b), (c) and that she is entitled to alimony by the weight of the evidence.

---

**1.** Appellant has not pursued this issue on appeal. *See infra* note 3.

We agree that the lower court erred in its statutory interpretation of 23 P.S. § 501(a), (b), (c) and accordingly vacate and remand.

Alverta and Charles were married in 1947 and separated after twenty-seven years of married life in 1974. Divorce proceedings began after six years of separation. Five children were born to the marriage, all of whom were adults at the times relevant to the hearings and decrees. Alverta, fifty-three at the time of divorce, had primary responsibility for raising the children and taking care of the marital household. In addition, she held jobs outside the home, usually as a laborer in a shoe factory. Charles was under a support order for $45 per week which ended November 1981. Alverta is currently employed at an hourly wage of $4.40, and is not guaranteed full-time work. Her assets consist of a 1966 Buick, $265 in savings, and $3,000 in Certificates of Deposit. She suffers from ulcers and partial blindness in one eye.

For most of the marriage Charles, age 56, has been employed by Bethlehem Steel, his current employer, where he is a maintenance man. He is under union contract for $20,000 per year. He remarried following the divorce. He has debts of approximately $13,400 accumulated during his first and second marriages. In addition, he recently undertook the financial expense of the funeral of the parties' daughter, approximately $3,200, and has assumed responsibility for caring and providing for his grandson following the death of the child's mother. He is in relatively good health. The record reveals that Charles was guilty of marital misconduct prior to the separation, including adultery, beating, improper treatment, and excessive drinking.

The Master, applying § 501 to the Hesses' circumstances, determined that Charles should not be required to pay alimony:

It is obvious that Mrs. Hess does not have a substantial earning capacity and, were it not for her having an accumulation of savings, we would recommend that she be awarded alimony. She has however, managed to save

$3,000.00 since the time of separation. It is our opinion after reviewing the Divorce Code and the Legislative debates that the purpose of alimony in this Commonwealth is to provide economic rehabilitation and that the Court is not permitted to grant an award unless both factors enumerated in Section 501(a) are met. Since Mrs. Hess has accumulated considerable savings, we cannot find that she lacks sufficient property to provide for her reasonable needs nor that she is unable to support herself through her employment. We also have considered the substantial obligations that Mr. Hess has incurred, none of which appear to be unreasonable. Consequently, we recommend that the demand for alimony be denied. R. 85A.

A goal of the Divorce Code of 1980 was to bring economic justice and fairness to parties upon dissolution of a marriage. A provision for alimony was included to implement that goal. The alimony provision was in part a response to the prior law under which no party was entitled to alimony following the entry of a divorce decree. *Stambaugh v. Stambaugh,* 458 Pa. 147, 329 A.2d 483 (1974); *Commonwealth ex rel. Bortin v. Bortin,* 210 Pa.Super. 355, 234 A.2d 55 (1967). In the usual situation where the husband was the primary wage earner, ending the marriage terminated the wife's right to support regardless of the length of the marriage, the wife's role in raising the family, her efforts on behalf of the husband's career, and the disparity in earning power and assets of the parties.

The Divorce Code was remedial and provided for economic fairness for both parties upon divorce through the vehicle of equitable distribution (Chapter 4) and alimony (Chapter 5). *Bacchetta v. Bacchetta,* 498 Pa. 227, 445 A.2d 1194 (1982); *Remick v. Remick,* 310 Pa.Super. 23, 456 A.2d 163 (1983); *Geyer v. Geyer,* 310 Pa.Super. 456, 456 A.2d 1025 (1983). Alimony and equitable distribution must be viewed as part of the legislative intention: to do economic justice. This is apparent in § 501(a) which requires that the court in

determining the entitlement to alimony consider the property distributed equitably pursuant to Chapter 4.

The provisions for alimony and equitable distribution provide the trial court with flexibility in resolving the economic fate of the parties upon divorce. The economic resolution for a marriage in which the parties have substantial assets but meager cash might be heavily weighted toward property distribution. On the other hand, the economic resolution for a marriage in which the parties have few assets but substantial cash might be weighted more heavily toward alimony [2] provided the standards established under Chapter 4 and Chapter 5 are satisfied.

With this background in mind, we analyze the alimony provision of the Divorce Code of 1980 as it relates to the instant case. The pertinent sections of the statute read:

### § 501. Alimony

(a) The court may allow alimony, as it deems reasonable, to either party, only if it finds that the party seeking alimony:

(1) lacks sufficient property, including but not limited to any property distributed pursuant to Chapter 4, to provide for his or her reasonable needs; and

(2) is unable to support himself or herself through appropriate employment.

(b) In determining whether alimony is necessary, and in determining the nature, amount, duration, and manner of payment of alimony, the court shall consider all relevant factors including:

(1) The relative earnings and earning capacities of the parties.

(2) The ages, and the physical, mental and emotional conditions of the parties.

(3) The sources of income of both parties including but not limited to medical, retirement, insurance or other benefits.

---

**2.** The Supreme Court of New Jersey discussed the interrelationship of equitable distribution and alimony in *Lepis v. Lepis,* 83 N.J. 139, 416 A.2d 45 (1980).

(4) The expectancies and inheritances of the parties.

(5) The duration of the marriage.

(6) The contribution by one party to the education, training or increased earning power of the other party.

(7) The extent to which it would be inappropriate for a party, because said party will be custodian of a minor child, to seek employment outside the home.

(8) The standard of living of the parties established during the marriage.

(9) The relative education of the parties and the time necessary to acquire sufficient education or training to enable the party seeking alimony to find appropriate employment.

(10) The relative assets and liabilities of the parties.

(11) The property brought to the marriage by either party.

(12) The contribution of a spouse as a homemaker.

(13) The relative needs of the parties.

(14) The marital misconduct of either of the parties during the marriage; however, the marital misconduct of either of the parties during separation subsequent to the filing of a divorce complaint shall not be considered by the court in its determinations relative to alimony.

(c) Unless the ability of the party seeking the alimony to provide for his or her reasonable needs through employment is substantially diminished by reason of age, physical, mental or emotional condition, custody of minor children, or other compelling impediment to gainful employment, the court in ordering alimony shall limit the duration of the order to a period of time which is reasonable for the purpose of allowing the party seeking alimony to meet his or her reasonable needs by:

(1) obtaining appropriate employment; or

(2) developing an appropriate employable skill.

Alverta contends that the Master reached his conclusion by an erroneous analysis of § 501(a) and (b) and ignoring (c). The thrust of her argument is that the Master did not

take into consideration the fourteen enumerated factors of (b) except to the extent of paying them lip service, because of the finding that she had saved $3,000 since separation from her husband. The Master's Report began by stating, "Under Section 501 of the Divorce Code, the Court may award Mrs. Hess alimony only if it finds that she lacks sufficient property to provide for her reasonable needs and is unable to support herself through appropriate employment." R. 82a. The Master also stated, "Although we can see no rational reason for making and discussing the findings under 501(b) when the requirements of 501(a) have not been met, we apparently have the responsibility to do so...." R. 82–3a. Alverta also contends that the scope of review in these matters is broad, the same as in the review of divorce itself.

Charles argues that § 501(a) establishes a threshold which must be reached by a party seeking alimony. Only if that threshold is passed (and he contends that Alverta does not) are the factors in § 501(b) to be applied. Charles maintains that the scope of appellate review in questions of alimony is a narrow one, i.e. limited to a determination of whether the lower court abused its discretion.

■ We begin by noting that our Court en banc recently ruled that the scope of appellate review in questions of alimony is limited to a determination of whether the lower court abused its discretion. *Remick v. Remick,* 310 Pa.Super. 23, 456 A.2d 163 (1983). The *Remick* Court explained that this Court's concern with property rights and monetary judgments is not as paramount as with decisions ruling on the status of marriage or the custody of children. We therefore will not disturb the lower court's acceptance of the Master's report absent a showing of abuse of discretion.

The precise question for our review is whether § 501(a) establishes a threshold for entitlement to alimony. If so, and the threshold is not met, the trial court makes no further inquiry and simply denies alimony.

This question has already been addressed and decided by this Court. In a well reasoned opinion in *Bickley v. Bickley*, 301 Pa.Super. 396, 447 A.2d 1025 (1982), we rejected an argument that § 501(a) established a threshold for entitlement to alimony:

Appellant contends that in order to be eligible for alimony, a dependent spouse must meet the *threshold requirements* of § 501(a)(1)–(2), see citation *supra*, after which the court could look at the provisions of § 501(b). However, he himself is inconsistent in his argument, for he urges the 'standard of living of the parties during the marriage', § 501(b)(8) as a measure to determine appellee's ability to support herself under the 'appropriate employment' standard of § 501(a)(2).

Upon review of the problem, we conclude that it is not possible to determine what is a 'reasonable need' under § 501(a)(2) without reference to specific facts of the case as they fit the relevant factors listed in § 501(b)(1)–(14). The wording of § 501(b) itself acknowledges this interrelationship in stating that the fourteen listed factors are to be used 'in determining *whether* alimony is necessary', which is identical to the 'threshold questions' of § 501(a)(1) and (2). [Emphasis supplied]

We hold, therefore, that the provisions of § 501 are to be read in conjunction with each other and with the intent and purposes of the act as a whole, so that economic justice results, and harm to the spouses and children is mitigated.

*Id.*, 301 Pa.Superior Ct. at 406, 447 A.2d at 1030–31.

We find the argument advanced by appellee Charles indistinguishable from the position taken by the appellant in *Bickley*. We therefore affirm in this case our holding that § 501(a) does *not* establish a threshold for entitlement to alimony, but that § 501(b) must be applied to test the standard of § 501(a). Only in this way will the goal of economic justice to the parties be achieved, and all words of the section be given full consideration. Our holding imple-

ments the purpose of the Code and is compatible with the principles of statutory construction.

■ The argument of Charles would have the effect of making § 501(a) determine eligibility for alimony and § 501(b) determine amount, once eligibility has been established. This approach is not compatible with the statutory language and the principles of construction. The language of a statute must be construed according to common and appropriate usage, so as to give effect to each and every provision of the act. 1 Pa.C.S. § 1903; *Commonwealth v. Hill,* 481 Pa. 37, 391 A.2d 1303 (1978). A statute should be construed as a whole, giving effect to all its provisions. 1 Pa.C.S. §§ 1921, 1922; *In the Interest of Jones,* 286 Pa.Super. 574, 429 A.2d 671 (1981); *Commonwealth Insurance Department v. Adrid,* 24 Pa.Commw. 270, 355 A.2d 597 (1976); *In re Turner,* 44 Pa.Commw. 326, 403 A.2d 1346 (1979). The Legislature is presumed not to have intended provisions as surplusage, so courts must construe a statute so as to give effect to every word, sentence and provision. *Commonwealth v. Lobiondo,* 501 Pa. 599, 462 A.2d 662 (1983); *Lukus v. Westinghouse Electric Corp.,* 276 Pa.Super. 232, 419 A.2d 431 (1980).

Section 501(b) states, *"In determining whether alimony is necessary,* and in determining the nature, amount, duration, and manner of payment of alimony, the court shall consider all relevant factors ...." (emphasis supplied). These words are clear, and cannot be disregarded in our reading of the section.

In construing a law, the specific provision prevails over the more general provision. 1 Pa.C.S. § 1933; *Bowers v. State Employees' Retirement Board,* 29 Pa.Commw. 561, 371 A.2d 1040 (1977); *Heck v. Zoning Hearing Board for Harveys Lake Borough,* 39 Pa.Commw. 570, 397 A.2d 15 (1979); *Commonwealth ex rel. Platt v. Platt,* 266 Pa.Super. 276, 404 A.2d 410 (1979). § 501(b) is more specific than § 501(a) and must therefore be considered in the initial determination of whether alimony is to be awarded.

Therefore, Alverta is correct in the claim that the criteria of § 501(b) are to be applied to the determination of whether she is entitled to alimony and Charles errs in his contention that § 501(b) comes into play only after the determination has been made by the sole operation of § 501(a) to establish a threshold. Our conclusion is consistent with *Geyer, supra,* in which criteria of § 501(b) were considered in deciding whether a spouse could provide for "reasonable needs."

 Some of the criteria of § 501(b) are to be used to decide whether the spouse seeking alimony is able to "provide for his or her reasonable needs" and is "unable to support himself or herself through appropriate employment," as required by § 501(a). The subsections which will help to decide this issue are the economic criteria, e.g. (1), (3), (4), (6), (8), (10), (11), (12), and (13). The non-economic criteria, e.g. (2), (5), (7), (9) and (14), as well as the economic criteria, are used to decide the "nature, amount, duration and manner of payment of alimony."

With these standards before us, we review the lower court's acceptance of the Special Master's report which recommended denial of alimony to Alverta Hess, in order to decide whether there has been an abuse of discretion. *Remick, supra.*

We begin by noting that the Master's report contained an error of law in its assertion that "we can see no rational reason for making and discussing the findings required under Section § 501(b) when the requirements of § 501(a) have not been met." R. 82a. Although the Master's report did make a partial § 501(b) review, we agree with Alverta's contention that the § 501(b) review was less than adequate. First, the Master failed to recognize that Alverta's $3,000 in Certificates of Deposit was accumulated during a period of support payments of $45 per week from Charles, and that she is unable to maintain savings absent some contribution from him. The $3,000 is intended for her retirement. Alverta's employment, unlike his, does not provide a vested right to a pension. Second, the Master's report indicated

that Alverta's income averages $130 "when she works a full week" R. 83a. The report omitted the fact that Alverta, as a part-time worker on an hourly wage, usually works less than a full week R. 36–38a. Third, the Master's report made no mention of alimony pendente lite, which was part of Alverta's claim.[3]

■ We cannot agree with the lower court's statement that "the master gave careful consideration to the list of factors enunciated under sections 501(b) and (c) of the alimony chapter of the code." Opinion, at 3. We find that the lower court has not correctly considered the findings of facts in light of Sections 501(a) and (b) of the Divorce Code.

§ 501(c) contains provisions for two classes of individuals: those who are able to be gainfully employed (for whom alimony may be provided on a temporary basis) and those individuals unable to be gainfully employed by reason of age, physical, mental or emotional condition, custody of minor children, or other compelling impediment to gainful employment. For such individuals, whose capacity for self-support is substantially diminished, alimony may be awarded on a continuing basis. In a determination of the duration of alimony, the factors of § 501(b) are brought to bear. See the discussion of § 501(c) in *Paul W. v. Margaret W. et al.*, 130 P.L.J. 6 (1982).

The dual approach embodied in § 501(c) gives the lower court leeway in awarding alimony, and is consistent with our view of alimony as essentially an economic component of the divorce settlement. We agree with the Supreme Court of New Jersey in *Lepis* (*supra* note 2, 416 A.2d at 54): "The law must be concerned with the economic realities of modern life, not a model of domestic relations that provided women with security in exchange for economic dependence and discrimination. "Alverta Hess has been

3. However, Alverta has waived any claims of error arising out of the Master's failure to mention alimony pendente lite. Alimony pendente lite was not mentioned in her exceptions to the Master's report or in her statement of questions presented in her brief to this Court. *See Shuda v. Shuda*, 283 Pa.Super. 253, 423 A.2d 1242 (1980); Pa.R.C.P. 1920.55(a); and Pa.R.A.P. 2116(a).

able to work on a part-time basis in the past. Her health is poor, and her economic security, both now and for the future, is minimal.

The order of the lower court overruling Alverta's exceptions to the Special Master's report of September 1, 1981 is vacated. We remand for proceedings not inconsistent with this opinion. In so remanding, we note that the Special Master's hearing was conducted nearly three years ago. In accordance with the goal of the Divorce Code to provide for economic justice and fairness to the parties, we direct the court to take additional testimony so that its final decree will not be based on a stale record. Jurisdiction is relinquished.