492 A.2d 707

**Rose Betty PACELLA**

v.

**Armand PACELLA, Appellant.**

Superior Court of Pennsylvania.

Argued Oct. 24, 1984.

Filed April 26, 1985.

Joseph M. Wymard, Pittsburgh, for appellant.

Regis J. McNally, Pittsburgh, for appellee.

Before SPAETH, President Judge, and BROSKY and OLSZEWSKI, JJ.

SPAETH, President Judge:

This is an appeal from an order granting alimony. Appellant argues that in fixing the amount of alimony, the trial court erred (1) in considering the earlier equitable distribution of property and appellant's earning capacity rather than his salary, and (2) in awarding alimony of unlimited duration. We affirm.

Appellant and appellee were married on May 16, 1964. N.T. 11/16/81 at 52, 133. Appellant was employed by a mortgage company and appellee was employed as a waitress. N.T. 11/16/81 at 53, 154. Appellee had never received a high school diploma, and was a widow with a five year old child. Appellant subsequently adopted the child. *Id.* at 52, 133. After the parties married, appellant began his own mortgage brokerage business, *id.* at 134–135, and in February 1974 he formed the Mar-Val Mortgage Corporation, of which he was president and sole shareholder, using the family home as collateral. *Id.* at 74, 137–38. Within one year after the parties' marriage, appellee, at appellant's request, left her job so that she would be readily available to fulfill the many social engagements entailed in appellant's business, and also, to reduce the parties' income tax bracket. *Id.* at 54, 134. On February 8, 1976, the only child of the marriage was born. *Id.* at 55, 133. For most of the duration of the marriage, appellee was primarily a full-time homemaker, concerned with caring for appellant and the children. Occasionally she served as bookkeeper for appellant's business or arranged business entertainment, but she did no work outside the home. During 1976 she attempted to obtain a real estate agent's license, but although she completed the course, she failed the examination. *Id.* at 61–62.

On April 30, 1979, appellee filed for divorce, having petitioned for support four days earlier. (R. at 27, 1) She subsequently amended her complaint to request custody, equitable distribution, counsel fees, alimony pendente lite, and alimony. (R. at 19, 29, 49, 57, 58) The trial court ordered that appellant pay temporary support of $425 per month (R. at 4); this was later raised, after hearing, to $900. (R. at 12) On October 5, 1979, a master was appointed, and on April 3, June 2 and 3, and July 15, 1980, the master heard testimony. (R. at 40, 47, 48, 50) On July 17, 1980, the trial court, upon the master's recommendation, ordered that appellant pay $1,400 per month as alimony

pendente lite and support for the parties' minor child. (R. at 21)

On May 4, 1981, appellant and appellee agreed out-of-court on an equitable property distribution. (R. at 59)[1] On May 7, 1981, the trial court signed the divorce decree, and on August 14, 1981, ordered that appellee should have physical custody of the minor child. (R. at 63, 65) In November and December 1981 the court heard four days of testimony on appellee's petition for alimony. By then, appellant had accumulated substantial arrearages on the court's earlier orders directing him to pay alimony pendente lite and child support. On December 21, 1982, the trial court ordered that appellant pay decreasing amounts of alimony and child support, and that upon the child's emancipation, he pay appellee alimony of $300 per month.[2] (R. at 86) This appeal followed.

1. In calculating the alimony award, the trial court found that as a result of the property settlement the following property was available to each of the parties:

WIFE

| | | |
|---|---|---|
| (1) Money taken from joint account, December, 1978 | $ 1,700 | |
| (2) Money received for Whitehall property | 6,500 | |
| (3) Money received from property settlement | 5,000 | |
| (4) Residence at 3130 Woodridge Drive, Whitehall | 25,000 | |
| (5) Mobile home and lot at Moraine State Park, net value | 11,000 | |
| (6) Household furnishings | 5,000 | |
| TOTAL | $54,200 | |

HUSBAND

| | |
|---|---|
| (1) Amount in joint savings accounts held Sept. 1978 | $ 17,000 |
| (2) Amount in Mar-Val Profit Sharing Account | 28,000 |
| (3) Amount received from Mar-Val after discontinuing business | 11,540 |
| (4) Residence, 3801 Brownsville Rd. Brentwood, net value | 67,000 |
| (5) House, 333 Euclid Ave. Glassport, net value | 10,000 |
| (6) Garage at 2020 Forbes Ave. net value | 4,500 |
| (7) Jewelry and coins | 12,000 |
| | $150,040 |

Slip op. of tr. ct. (3/15/83) at 5–6.

2. The trial court's order provides in relevant part:
1) Husband is found to be in contempt of this court's order of July 17, 1980. He may purge himself of the contempt by complying with this order.
2) Arrearages are set at $14,041.00.

-1-

Appellant's first argument is that in fixing the amount of alimony, the trial court erred in considering the earlier equitable distribution of property and appellant's earning capacity rather than his salary. This argument is without merit.

Section 501 of the Divorce Code,[3] provides in part:

(a) The court may allow alimony, as it deems reasonable, to either party, only if it finds that the party seeking alimony:

(1) lacks sufficient property, including but not limited to any property distributed pursuant to Chapter 4, to provide for his or her reasonable needs; and

(2) is unable to support himself or herself through appropriate employment.

(b) In determining whether alimony is necessary, and in determining the nature, amount, duration, and manner of payment of alimony, the court shall consider all relevant factors including:

(1) The relative earnings and earning capacities of the parties.

(2) The ages, and the physical, mental and emotional conditions of the parties.

3) Beginning on July 1, 1983, and for the entire year of 1983, Husband shall pay Wife alimony and child support in the amount of $1,200.00 per month, plus $200.00 per month on the arrearages.

Beginning on January 1, 1984, and for the entire year of 1984, Husband shall pay Wife alimony and child support in the amount of $1,000.00 per month, plus $400.00 per month on the arrearages.

Beginning on January 1, 1985, and thereafter until the emancipation of Vincent, Husband shall pay Wife alimony and child support in the amount of $800.00 per month, plus $600.00 per month on the arrearages until they are fully paid.

Upon Vincent's emancipation, Husband shall pay Wife alimony in the amount of $300.00 per month.

(R. at 86)

Appellant does not contest either the trial court's calculation of the arrearages or its finding of contempt.

3. Act of Apr. 2, 1980 P.L. 63, No. 26, 23 Pa.C.S. §§ 101–801.

(3) The sources of income of both parties including but not limited to medical, retirement, insurance or other benefits.

(4) The expectancies and inheritances of the parties.

(5) The duration of the marriage.

(6) The contribution by one party to the education, training or increased earning power of the other party.

(7) The extent to which it would be inappropriate for a party, because said party will be custodian of a minor child, to seek employment outside the home.

(8) The standard of living of the parties established during the marriage.

(9) The relative education of the parties and the time necessary to acquire sufficient education or training to enable the party seeking alimony to find appropriate employment.

(10) The relative assets and liabilities of the parties.

(11) The property brought to the marriage by either party.

(12) The contribution of a spouse as homemaker.

(13) The relative needs of the parties.

(14) The marital misconduct of either of the parties during the marriage; however, the marital misconduct of either of the parties during separation subsequent to the filing of a divorce complaint shall not be considered by the court in its determinations relative to alimony.

We have held that these provisions must be read together, and that therefore the enumerated "relevant factors" are relevant both to the determination under Section 501(a) of a party's "reasonable needs," and to the determination under Section 501(b) of the amount necessary to satisfy those needs. *See Hess v. Hess,* 327 Pa.Super. 279, 475 A.2d 796 (1984); *Bickley v. Bickley,* 301 Pa.Super. 396, 447 A.2d 1025 (1982). We have also held that in enacting Section 501, the legislature intended "to provide for economic justice," and that "[t]his goal requires that [the section] be applied in a nonmechanical manner," for "[c]learly, the legislature intended that a reasonable and compassionate result be

reached." *Geyer v. Geyer,* 310 Pa.Super. 456, 463–64, 456 A.2d 1025, 1029 (1983). *See also Hess v. Hess, supra; Bickley v. Bickley, supra.* In reviewing the result reached, we will reverse the trial court's award only for an abuse of discretion. *See Remick v. Remick,* 310 Pa.Super. 23, 456 A.2d 163 (1983) (en banc); *see also Ruth v. Ruth,* 316 Pa.Super. 282, 462 A.2d 1351 (1983).

▉ Our review of the record and of the thorough opinion of the trial court discloses no abuse of discretion. Rather, we are persuaded that the trial court's award was "reasonable and compassionate," and was based upon the court's careful consideration of each of the enumerated relevant factors.[4] The court found, for example, that the parties had been married for 17 years (Section 501(b)(5)); that appellee was 43 years old at the time of the hearing and was healthy, but had no high school diploma (Section 501(b)(2), (9)); and that appellee had been a homemaker for most of the marriage (Section 501(b)(12)), although she had contributed to the social contacts upon which the appellant's business depended (Section 501(b)(6)). *See generally* slip op. of tr. ct. at 3–14. The court also considered the earlier equitable distribution of property, but there was no error in this, for the Divorce Code required that it do so, both in determining that appellee has "reasonable needs," and in determining the amount necessary to satisfy those needs. *See* 23 Pa.C.S. § 501(a)(1), (b)(10). Indeed, when a trial court did not consider this factor, we remanded to enable it to do so. *See Geyer v. Geyer, supra.*

▉ Nor did the trial court err in considering appellant's earning capacity rather than his salary, as a basis for calculating the appropriate amount of the award. The Divorce Code directs that a trial court "grant or withhold alimony according to the actual need and ability to pay of [ ] the parties...." in order to "effectuate economic justice

4. The trial court noted that because the parties had agreed that marital misconduct would not be relevant for the purpose of determining alimony, it did not consider Section 501(b)(14). *See* Slip op. of tr. ct. at 3 n. 3.

between [the] parties[.]" 23 Pa.C.S. § 102(a)(6). While ordinarily this means that alimony should be based upon actual earnings, that is true only because ordinarily actual earnings accurately measure "ability to pay." Moreover, in the context of support proceedings, we have held that earning capacity, rather than actual earnings, is the determinative factor in ascertaining a party's ability to pay support, *Commonwealth ex rel. Raitt v. Raitt,* 203 Pa.Super. 226, 199 A.2d 512 (1964), and that a party may not deliberately reduce his level of income in order to reduce his support obligation, *Weiser v. Weiser,* 238 Pa.Super. 488, 362 A.2d 287 (1976); *Commonwealth ex rel. McNulty v. McNulty,* 226 Pa.Super. 247, 311 A.2d 701 (1973). Where we have found, in support cases, that actual earnings did not reflect earning capacity, we have approved the use by trial courts of a variety of means to arrive at earnings figures that accurately reflect a party's real wealth. *See e.g., Commonwealth ex rel. Maier v. Maier,* 274 Pa.Super. 580, 418 A.2d 558 (1980) (where supporting spouse is sole stockholder of corporation and determines his own salary, court may pierce corporate veil and use corporate income as basis for determining earning capacity); *Commonwealth v. Miller,* 202 Pa.Super. 573, 198 A.2d 373 (1964) (where supporting spouse is self-employed, net income, as it appears on income tax forms, is not "infallible" measure of real wealth; court accordingly may add back portion of depreciation deduction in calculating amount of support owed); *Commonwealth ex rel. Gutzeit v. Gutzeit,* 200 Pa.Super. 401, 189 A.2d 324 (1963) (in determining supporting spouse's earning capacity, court should consider not only salary paid by wholly owned corporation, but all prerequisites provided by corporation.) As a matter of economic common sense, earning capacity is equally relevant whether the proceeding be for support, alimony pendente lite, or alimony after divorce. We have, in fact, recognized this and have held, applying support cases, that a trial court properly based an alimony award upon earning capacity, as evidenced by prior earnings, reasoning that a party may not choose to reduce his alimony obligation by accepting lower paid employment.

188

*See Bickley v. Bickley, supra* 301 Pa.Super. at 407, 447 A.2d at 1031. We now further hold that where, as here, current or prior income does not accurately reflect earning capacity, a trial court may arrive at an appropriate alimony award by the same means as it calculates appropriate support orders.

██ The present case clearly required that the trial court look beyond appellant's salary to determine his ability to pay an alimony award responsive to appellee's needs. The court made the following findings. Appellant ended the active life of Mar-Val Corporation, of which he was president and sole shareholder, solely because he feared that appellee would receive a share of the corporation in the divorce proceedings. (Slip op. of tr. ct. at 7, N.T. 12/4/81 at 480) Appellant then continued his business activities without change as president of a new corporation, Golden Triangle, which was ostensibly owned by two nephews, to whom appellant referred as "employees." *Id.* at 483. The transfer of business from Mar-Val to Golden Triangle took place in the summer of 1980, in the midst of the contested divorce proceedings. *Id.* 11/16/81 at 164. The new owners of Golden Triangle paid nothing to Mar-Val for the transfer of corporate "good will," which was the principal asset of both corporations. (Slip op. of tr. ct. at 9) Appellant treated Golden Triangle's funds as his own; received numerous no-interest loans from the corporation; had numerous personal expenses paid by the corporation; and, in general, so commingled corporate and personal funds as to render efforts to separate the two extremely difficult. (Slip op. of tr. ct. at 9–10; *see, e.g.,* N.T. 11/18/81 at 256, 270–89; 12/4/81 at 460–66; R. at 83, Exhibit B, D) These findings are supported by the record, and in turn, support the trial court's decision to use corporate income (with appropriate adjustments) rather than salary, as the basis upon which to calculate appellant's "ability to pay" alimony.

–2–

Appellant also argues that the trial court erred in awarding appellee alimony of unlimited duration.

Prior to the enactment of the new Divorce Code in 1980, Pennsylvania was almost alone in not providing for an award of alimony following divorce. *See* L.Z. Gold-Bickin and J.A. Rounick, "The New Pennsylvania Divorce Code," 25 *Villanova L.Rev.* 617 (1979–1980). *See also Hess v. Hess, supra* 327 Pa.Super. at 283–84, 475 A.2d at 798–99. Our Supreme Court summarized the pre-Code law of alimony as follows: "The Pennsylvania Divorce Law does not provide for alimony following any divorce from the bonds of matrimony, except in cases of insanity." *Stambaugh v. Stambaugh*, 458 Pa. 147, 156, 329 A.2d 483, 488 (1974), (citations omitted). Section 501 of the new Divorce Code changed the law by providing that a "court may allow alimony" after divorce, upon satisfaction of the conditions set forth in the section. Stated generally, the conditions look to "rehabilitation," that is, alimony is to be awarded for a sufficient period of time to enable the party receiving it to become self-supporting. *See* J.A. Rounick, 1 *Pennsylvania Matrimonial Practice*, 433–38 (1984) and cases cited therein. Where, however, rehabilitation is not possible, as may be the case by reason of age, health, or other circumstances, then the alimony may continue. Thus, Section 501(c) of the Divorce Code provides that the court "shall limit the duration" of an order awarding alimony, "[u]nless" the party seeking alimony will not be able "to provide for his or her reasonable needs through employment." To quote the section in full:

(c) Unless the ability of the party seeking the alimony to provide for his or her reasonable needs through employment is substantially diminished by reason of age, physical, mental or emotional condition, custody of minor chidren, or other compelling impediment to gainful employment, the court in ordering alimony shall limit the duration of the order to a period of time which is reasonable for the purpose of allowing the party seeking alimony to meet his or her reasonable needs by:

(1) obtaining appropriate employment; or

(2) developing an appropriate employable skill.

23 Pa.C.S. § 501(c).

Section 501 thus reflects an attempt to accomplish two purposes, which may be inconsistent: that divorce should represent a final severing of the marital tie; but that the severance should "[e]ffectuate economic justice between [the] parties." 23 Pa.C.S. § 102(a)(6). The sponsors of the section acknowledged the tension implicit in this attempt: "... there is a right to alimony," they noted, "but there is also a responsibility on the part of the person[s] requesting alimony and accepting alimony to do everything in their power to contribute to their own economic well-being to the extent that is possible." September 26, 1979 at HJ 1873L, *quoted in* Rounick, 1 *Pennsylvania Matrimonial Practice, supra* at 433. Recognizing this tension, we have held that "[i]n a determination of the duration of alimony, the factors of § 501(b) are brought to bear," *Hess v. Hess, supra* 327 Pa.Super. at 290, 475 A.2d at 802, to which we now add that the trial court must also bring to bear the determination under Section 501(a) of the "reasonable needs" of the party seeking alimony.

Here we are satisfied that the trial court's decision to award alimony of unlimited duration represents a proper application of Section 501 to the facts disclosed by the testimony. Appellee is a woman of limited education and employment skills. 23 Pa.C.S. § 501(b)(10). Because of the demands of caring for her family and helping appellant in his business, she has not been regularly employed since the first year of marriage. 23 Pa.C.S. § 501(b)(6), (12). The trial court found that she is capable of resuming work as a waitress, and therefore attributed to her an earning capacity of $500 per month. 23 Pa.C.S. § 501(b)(1). The court further found, however, that even with this income appellee can not, through appropriate employment, meet her "reasonable needs," measured by the standard of living the couple had established during the marriage, 23 Pa.C.S. § 501(b)(8), and that she will not be able to do so for the indefinite future because of her lack of education, continuing child care responsibilities, advancing age, and inability to succeed at previous attempts to enhance her employabili-

ty. *See* 23 Pa.C.S. § 501(b)(2), (6), (7), (9). Finally, the court found that appellee can not meet her needs through property she now has because of the "totally inequitable property division" to which, against advice of counsel, she agreed when appellant wrongfully withheld support payments. *See* 23 Pa.C.S. § 501(a)(1); (b)(10); Slip op. of tr. ct., 3/15/83, at 4. Given these findings, the trial court could reasonably conclude that appellee's ability to provide for her "reasonable needs" through "appropriate employment" was "substantially diminished by reason of age, custody of minor children, or other compelling impediment to gainful employment." 23 Pa.C.S. § 501(c). *See Hodge v. Hodge*, 337 Pa.Super. 151, 486 A.2d 951 (1984) (forty-four year old woman with three minor children and associate degree in medical technology entitled to long-term alimony under Section 501(c), considered in context of Section 501 as a whole); *Eck v. Eck*, 327 Pa.Super. 334, 340, 475 A.2d 825, 828 (1984) (lack of employment skills, lack of education, lack of experience, and age, among other factors, may constitute "compelling impediment[s] to gainful employment" for purposes of Section 501(c).) We therefore find no abuse of discretion by the trial court. Should appellee's circumstances change, appellant may petition the court to modify its order. *See* 23 Pa.C.S. § 501(e); *Hodge v. Hodge, supra.*

AFFIRMED.