562 A.2d 841

**Margaret NUTTALL, Appellee,**

v.

**Robert NUTTALL, Appellant.**

Superior Court of Pennsylvania.

Submitted Nov. 15, 1988.

Filed July 17, 1989.

Francis X. Nolan, Philadelphia, for appellant.

Neil Hurowitz, King of Prussia, for appellee.

Before OLSZEWSKI, BECK and JOHNSON, JJ.

OLSZEWSKI, Judge:

This is an appeal from a final decree denying appellant's exceptions. Appellant raises five issues for our review: (1) whether the 1980 Divorce Code violates the due process clause of the United States Constitution; (2) whether the

1980 Divorce Code is unconstitutional under the contract clause of the Pennsylvania and United States constitutions when applied to properties which appellant intentionally took title as a tenant by the entirety or in his individual name; (3) whether the trial court erred in denying appellant credit for monies spent to preserve marital assets and reduce marital debt; (4) whether the trial court erred in awarding alimony to appellee; and (5) whether the trial court erred in awarding partial counsel fees to appellee. For the reasons below, we affirm.

On November 31, 1981, appellee-wife instituted an action under the 1980 Divorce Code, seeking a divorce, equitable distribution, alimony, alimony pendente lite, child support, counsel fees, costs and expenses. Subsequently, the parties entered into a stipulation providing for a bifurcated divorce and, on November 5, 1982, the bifurcated divorce decree was entered. Following a hearing on the remaining economic claims, a master filed a report and recommendation. Both parties timely filed exceptions to the master's report. Thereafter, hearings *de novo* were conducted. On May 20, 1986, the trial court entered its *decree nisi.* Appellant filed exceptions to the *decree nisi.*[1] On December 11, 1987, a final decree, amending the previous adjudication and order, was entered by the trial court. This appeal followed.

■ Appellant first maintains that retroactive application of the 1980 Divorce Code violates the due process clause of

1. On August 5, 1986, appellee filed a motion to dismiss appellant's exceptions for violation of Montgomery County Local Rule 252 ("Failure to make payment of [estimated costs of trial transcript] may be a basis for refusal of the [post-trial] Motions or dismissal of the Exceptions for lack of a transcript.") The trial court granted appellee's motion, and dismissed appellant's exceptions for failure to comply with the local rule. In its order, the trial court also adopted the *decree nisi* of May 20, 1986, as the court's final decree. On appeal, in *Nuttall v. Nuttall,* 361 Pa.Super. 320, 522 A.2d 603 (1987), this Court concluded that the trial court abused its discretion in dismissing appellant's exceptions and, accordingly, reversed the decree and remanded to the trial court. This Court reasoned that Montgomery County Local Rule 252 was inconsistent with Pennsylvania Rule of Judicial Administration 5000.6 and, consequently, found the local rule to be ineffective and unenforceable.

the United States Constitution.[2]  Appellant asserts:

> In denying Mr. Nuttall's point on this issue, the trial court relied upon *Bacchetta v. Bacchetta,* 498 Pa. 227[, 445 A.2d 1194] (1982), which admittedly is contra defendant's position.  However, we believe that *Bacchetta* was decided improperly and should be reversed.

Appellant's brief at 16.  As an intermediate appellate court, we cannot accept appellant's invitation to reverse a majority decision of a higher appellate court.  In *Bacchetta,* the majority of the Supreme Court held that property acquired during the marriage but before the effective date of the 1980 Divorce Code is "marital property," subject to the equitable distribution provisions of the Code upon termination of the marriage.  In *Krenzelak v. Krenzelak,* 503 Pa. 373, 469 A.2d 987 (1983), the majority of the Supreme Court acknowledged the validity of *Bacchetta* by distinguishing *Bacchetta* from circumstances where the equitable distribution provisions of the 1980 Code are applied to defeat the vested property rights of a transferee who is not a party to the divorce action and who has acquired these rights prior to the enactment and effective date of the Code.  Most recently, the Supreme Court in *Sutliff v. Sutliff,* 518 Pa. 378, 543 A.2d 534 (1988), reaffirmed the *Bacchetta* decision by denying husband's claim that the equitable distributions of the Divorce Code cannot be constitutionally applied to property rights which vested prior to the Code's effective date.  It is apparent from the foregoing decisions that *Bacchetta* continues to be the law in Pennsylvania.  Accordingly, as an intermediate appellate court, we are bound to follow it.

Second, appellant argues that the 1980 Divorce Code is unconstitutional under the contract clause of the United States and Pennsylvania constitutions.[3]  Specifically, appel-

2.  Like the trial court, we treat appellant's contention as contesting the constitutionality of the application of the equitable distribution provisions of the 1980 Divorce Code to appellant's property rights.  *See* trial court opinion at 6.

3.  Article I, Section 10 of the United States Constitution reads in pertinent part:

lant maintains that the retroactive application of the equitable distribution provisions of the 1980 Divorce Code to properties held by the parties as tenants by the entireties and to property held in appellant's individual name impairs his contractual rights by: (1) altering his bargained-for consideration involved in the purchase of property; and (2) changing his intention in entering into agreements of sale of property.[4] In the instant case, the trial court held that the marital assets included:

> 1. The marital home in Huntingdon Valley, Lower Moreland Township, Montgomery County, Pennsylvania, which was purchased during the marriage and has a value of $117,500.00.
>
> 2. A one-fourth interest in a property in Brigantine, New Jersey, purchased during the marriage, the interest having a value of $77,000.00.
>
> 3. A bar and restaurant which is in husband's name alone but which was purchased during the marriage, having a total value of $81,000.00. This business (including the liquor license) and real estate was purchased by husband with an *inheritance* from his parents of approximately $40,000.00. The *market value* therefore is $41,000.00.

Amended adjudication and order at 3 (emphasis in original). Furthermore, the trial court distributed the aforementioned assets as follows:

> No State shall ... pass any Bill of attainder, ex post facto Law, or law impairing the Obligation of Contracts....
>
> U.S. Const. Art. I, § 10, cl. 1. Article I, Section 17 of the Pennsylvania Constitution provides:
>
> No *ex post facto law*, nor any law impairing the obligation of contracts, or making irrevocable any grant of special privileges or immunities, shall be passed.
>
> Pa. Const. Art. I, § 17. There is no distinction between the clauses. *See First National Bank of Pennsylvania v. Flanagan*, 515 Pa. 263 n. 1, 528 A.2d 134 n. 1 (1987).

**4.** Appellant states:

> Mr. Nuttall, being a lawyer, was taught and understood more significantly than a lay person, the nature of the titles of the real estate he held. He even opted to hold 2 as tenants by the entireties and the third in his own name.

Appellant's brief at 13.

1. The marital residence at 1488 Greenwalt Lane, Huntingdon Valley, Pennsylvania and the Brigantine property shall be put up for sale immediately and wife-plaintiff shall receive sixty (60%) percent of the net proceeds from the sale of these two properties and the husband-defendant shall receive forty (40%) percent of the net proceeds.

2. The premises and restaurant business (including the liquor license) at 3rd and Spencer Avenue shall be put up for sale immediately. Husband shall reserve the first Forty Thousand ($40,000.00) Dollars of the net proceeds. The remaining balance from the sale of this property shall be distributed sixty (60%) percent to wife-plaintiff and forty (40%) to husband-defendant. (The first $40,-000.00 represents the husband-defendant's inheritance from his parents which was invested in this business and real estate.)

Amended adjudication and order at 8. According to the deed to the marital residence, the parties took the property as tenants by the entireties. In addition, the record indicates that a one-fourth interest of the Brigantine shore property is held by the parties as tenants by the entireties,[5]

5. The remaining three-quarter interest is held by three couples. The couples, including the parties, hold the shore property as tenants in common with each other and, at the same time, each couple holds their respective one-fourth interest as tenants by the entireties. Appellant questions the jurisdiction of the trial court to sell the entire property. Appellant asserts:

> The shore property is held in 8 entities, being 4 sets of husbands and wives. Each husband and wife team holds as tenants in common with the others. By virtue of this arrangement, any sale or refinancing would have to have signatures of all. Nevertheless it was ordered sold. The trial court had no jurisdiction over those other 6 and could not force them to agree to the sale.

Appellant's brief at 12–13. Although appellant has not properly preserved this point for appeal, *see* Pa.R.A.P. 2116 ("ordinarily no point will be considered which is not set forth in the statement of questions involved or suggested thereby"); *Rago v. Nace,* 313 Pa.Super. 575, 460 A.2d 337 (1983), we nonetheless feel compelled to address the issue of jurisdiction. *See Vale Chemical Co. v. Hartford Accident and Indemnity Company,* 512 Pa. 290, 294 n. 1, 516 A.2d 684, 686 n. 1 (1986) ("Pa.R.C.P. 1032(2) allows a court to raise *sua sponte* issues of subject matter jurisdiction and failure to join an indispensable party."). Appellant's jurisdictional argument is based upon two faulty premises. First, we note that appellant misreads the trial court order regarding

and the bar and restaurant is held in appellant's name alone.

■ Generally, the contract clauses of the United States and Pennsylvania constitutions prevent impairment of the parties' contractual rights from subsequent legislation. *See Flanagan*, 515 Pa. at 268, 528 A.2d at 137. However, like property rights, contract rights are not absolute and, therefore, are subject to the reasonable exercise of the state's police power. *See PruneYard Shopping Center v. Robins*, 447 U.S. 74, 84, 100 S.Ct. 2035, 2042, 64 L.Ed.2d 741 (1980). In *Keystone Bituminous Coal Association v. Nicholas DeBenedictis*, 480 U.S. 470, 107 S.Ct. 1232, 94 L.Ed.2d 472 (1987), the United States Supreme Court explained:

[I]t is to be accepted as commonplace, that the Contract Clause does not operate to obliterate the police power of the states. " ... [T]he interdiction of statutes impairing the obligation of contracts does not prevent the State from exercising such powers as are vested in it for the promotion of the common weal, or are necessary for the

equitable distribution. A fair reading of the order indicates that the trial court did not order a sale of the couples' three-quarter interests, but only the one-fourth interest held by the parties. Second, appellant misconstrues the effect of title held by the couples as tenants in common. A tenant in common need not obtain permission of the co-tenant to sell his respective interest. *Werner v. Quality Service Oil Co., Inc.*, 337 Pa.Super. 264, 486 A.2d 1009 (1984) (tenant in common may, without consent of his co-tenant, sell, convey or dispose of his undivided interest in the property). We note that paragraph eight of an agreement of sale of a one-fourth interest to one of the couples provides for a first option to purchase by the existing owners collectively and, if not accepted, to the remaining unit owners individually. *See* Exhibit 16–B at 2. We, however, do not read this provision as requiring the parties or the trial court to secure permission from the co-tenants to sell the parties' one-fourth interest prior to a sale of that interest. Thus, the co-tenants' interest in the parties' unit is not implicated in this divorce proceeding. It would be implicated if the trial court ordered a sale of the one-fourth interest to a particular person or entity without regard to the first option to purchase. Consequently, joinder of the parties was not required pursuant to Pa.R.C.P. 1920.34 and Note ("The joinder of persons other than husband and wife may be essential ... where persons other than the parties have an interest in property which is the subject matter of a distribution."). Accordingly, the trial court exercised proper jurisdiction.

general good of the public, though contracts previously entered into between individuals may thereby be affected. This power, which in its various ramifications is known as the police power, is an exercise of the sovereign right of the Government to protect the lives, health, morals, comfort and general welfare of the people, and is paramount to any rights under contracts between individuals." *Manigault v. Springs*, 199 U.S. 473, 480 [26 S.Ct. 127, 130, 50 L.Ed. 274].

*Id.* at 503, 107 S.Ct. 1232, 1251, 94 L.Ed.2d 472, 500; *accord, DePaul v. Kauffman*, 441 Pa. 386, 399, 272 A.2d 500, 507 (1971).

As stated earlier, our Supreme Court, in *Bacchetta*, held that the equitable distribution provision applied to property acquired prior to the effective date of the Code, and that this application did not constitute an unconstitutional deprivation of property without due process of law. In reaching this decision, the Court construed the provisions as presenting a permissible regulation of the marital relationship pursuant to the state's police power. The *Bacchetta* Court observed:

> Prior to the enactment of the Divorce Code, in many marriages a nonworking spouse contributed years of service to the family, but did not realize any significant gain. Thus, upon divorce, nonworking spouses, who frequently had no marketable skills, were left with few, if any assets of their own and faced the risk of becoming public charges. By providing for the distribution of property acquired during the marriage, the Divorce Code permits the correction of the economic injustices which often arose under former law and allows nonworking spouses to become self-supporting with the least financial hardship possible.

*Bacchetta*, 498 Pa. 227, 232, 445 A.2d 1194, 1197. The Court further noted:

> Where, as here and in most cases for years to come, the parties were married before the enactment of the Divorce Code, it would be unreasonable to interpret the Divorce

Code as providing for equitable distribution of only that property acquired after the Code's effective date. Such an interpretation would impose the unmanageable burden on courts and litigants of determining which properties were acquired before, and which after, the effective date of the Code. Such an interpretation would also substantially deny the benefits of the Divorce Code to spouses in marriages in existence at the time of the Code's enactment, thereby prolonging for a least a generation the very inequity the Legislature sought to remedy.

*Id.,* 498 Pa. at 231, 445 A.2d at 1196. In addition, the Supreme Court found the provisions to be "carefully tailored" to achieve the objectives of the Code. "[E]quitable distribution of property acquired during the marriage occurs only upon divorce, only in cases where it is justified, and only in amounts warranted by the facts." *Id.,* 498 Pa. at 235, 445 A.2d at 1198.

■ Instantly, we follow the rationale in *Bacchetta* in finding that the equitable distribution provisions of the Divorce Code are a legitimate exercise of the state's police power and, therefore, conclude that application of these provisions to property acquired during the parties' marriage does not constitute an unconstitutional impairment of appellant's contractual rights.

Third, appellant asserts that the trial court erred in denying him credit for monies spent to preserve the marital assets and reduce the marital debt.

Initially, we note that "(a)n appellate court will reverse an order determining equitable distribution of marital property only for an abuse of discretion by the trial court." *Baraff v. Baraff,* 338 Pa.Super. 203, 210, 487 A.2d 925, 929 (1985). "Under this standard, we do not usurp the hearing court's duty as fact finder. Rather, we apply the legislative guidelines of the Divorce Code to the record to determine whether or not the hearing court has abused its discretion." *Barnhart v. Barnhart,* 343 Pa.Super. 234, 237, 494 A.2d 443, 444 (1985); *Semasek v. Semasek,* 331 Pa.Super. 1, 6, 479 A.2d 1047, 1050 (1984).

*Sergi v. Sergi,* 351 Pa.Super. 588, 591, 506 A.2d 928, 930 (1986).

■ Section 401(d) specifies the factors to be considered by the trial court in resolving the marital property rights of the parties. These factors include:

(1) The length of the marriage.

(2) Any prior marriage of either party.

(3) The age, health, station, amount and sources of income, vocational skills, employability, estate, liabilities and needs of each of the parties.

(4) The contribution by one party to the education, training, or increased earning power of the other party.

(5) The opportunity of each party for future acquisitions of capital assets and income.

(6) The sources of income of both parties, including but not limited to medical, retirement, insurance or other benefits.

(7) The contribution or dissipation of each party in the acquisition, preservation, depreciation or appreciation of the marital property, including the contribution of a party as homemaker.

(8) The value of the property set apart to each party.

(9) The standard of living of the parties established during the marriage.

(10) The economic circumstances of each party at the time the division of property is to become effective.

23 P.S. §§ 401(d)(1)–(10). Consideration of these factors by the trial court "requires compilation, computation, weighing and balancing considerations, and then applying [its] sound discretion ... to achieve economic justice." *Fratangelo v. Fratangelo,* 360 Pa.Super. 487, 502, 520 A.2d 1195, 1203 (1987). In its consideration of § 401(d)(7), the trial court stated:

Certainly, by virtue of his income, husband-defendant contributed more toward the acquisition of physical marital property but may well have also contributed to the dissipation of marital property in that the premises on Weymouth Street, Philadelphia and 7th Street, Philadel-

phia apparently went to sheriff's sale and the premises 432 West Roselyn Street were sold in October 1985 by the husband-defendant for an alleged loss of $1,359.04.

Amended adjudication at 7. It is evident that the trial court considered appellant's contribution in maintaining certain marital assets and reducing marital debt. The trial court, however, offset appellant's contribution by the dissipation of other marital property. We find no abuse of discretion in the trial court's approach.[6]

Fourth, appellant argues that the trial court erred in awarding alimony to appellee. Specifically, appellant contends that the following factors should have been considered by the trial court in denying an alimony award in the instant case:

(1) appellee was an alcoholic during most of her 20-year marriage;

(2) appellee was awarded substantial marital property;

(3) appellee was instructed by her attorney not to work;

(4) appellee maintained a $19,500.00 check representing her inheritance in a desk drawer for three—four months

---

**6.** In support of his contention, appellant refers to the trial court's statement that it considered appellant's contributions, but gave no monetary value to them. It is true that the court did not specify the monetary value of husband's contribution; however, it explained its reasons for the instant distribution ordered in a comprehensive manner. In its opinion, the trial court writes:

> Contrary to Defendant's assertion, we took into consideration the fact that he made payments on the mortgage for the Huntingdon Valley home and paid various household bills during the pendency of this action. However, in making a decision regarding equitable distribution we evaluated the facts of this case, weighing and balancing them in view of the list of factors in § 401(d). Following an analysis of all the circumstances, we found that Plaintiff-wife was at a definite economic disadvantage in relation to Defendant-husband and that she should receive a greater percentage of the proceeds from the sale of both the Huntingdon Valley and Brigantine properties.

Opinion at 9. We, therefore, find no abuse of discretion. *See Johnson v. Johnson*, 365 Pa.Super. 409, 417, 529 A.2d 1123, 1127 (Beck, J., concurring opinion), *alloc. dn.*, 517 Pa. 623, 538 A.2d 877 (1987) ("Section 401(d) provides the necessary flexibility for the court to consider the relevant 401(d) factors separately and in relation to each other so as to accomplish economic justice.").

without negotiating or depositing the check to secure interest;

(5) appellee continued to live in the marital residence before, during and after divorce, without *any* expense to herself; and

(6) appellee engaged in marital misconduct.

Initially, we note that appellant's contention with respect to factors (1) and (4) have not been properly preserved for appellate review. Consequently, those issues are waived. *See* Pa.R.C.P. 1920.55(a); *Barner v. Barner*, 364 Pa.Super. 1, 527 A.2d 122 (1987) (appellant's argument is waived where appellant's exceptions stated mere assertion). We find appellant's remaining contentions to be without merit. "The role of an appellate court in reviewing alimony orders is limited; we review only to determine whether there has been an abuse of discretion by the trial court." *Lee v. Lee*, 352 Pa.Super. 241, 507 A.2d 862 (1986); *Remick v. Remick*, 310 Pa.Super. 23, 456 A.2d 163 (1983) (*en banc*). Section 501 of the Divorce Code, provides in part:

(a) The court may allow alimony, as it deems reasonable, to either party, only if it finds that the party seeking alimony:

(1) lacks sufficient property, including but not limited to any property distributed pursuant to Chapter 4, to provide for his or her reasonable needs; and

(2) is unable to support himself or herself through appropriate employment.

(b) In determining whether alimony is necessary, and in determining the nature, amount, duration, and manner of payment of alimony, the court shall consider all relevant factors including:

(1) The relative earnings and earning capacities of the parties.

\*     \*     \*     \*     \*     \*

(3) The sources of income of both parties including but not limited to medical, retirement, insurance or other benefits.

(4) The expectancies and inheritances of the parties.

\* \* \* \* \* \*

(9) The relative education of the parties and the time necessary to acquire sufficient education or training to enable the party seeking alimony to find appropriate employment.

(10) The relative assets and liabilities of the parties.

\* \* \* \* \* \*

(12) The contribution of a spouse as a homemaker.

(13) The relative needs of the parties.

(14) The marital misconduct of either of the parties during the marriage; however, the marital misconduct of either of the parties during separation subsequent to the filing of a divorce complaint shall not be considered by the court in its determinations relative to alimony.

23 P.S. § 501. To determine a party's eligibility for alimony, Sections 501(a) and (b) must be read together. *Hess v. Hess*, 327 Pa.Super. 279, 287, 475 A.2d 796, 801 (1984) (Section 501(a) does not establish a threshold for entitlement to alimony.). In addition, we note that, "[i]n applying these Code sections both trial courts and this Court must keep in mind that the overriding goal of alimony in this Commonwealth is the effectuation of economic justice between the parties. We must, therefore, not require an overly mechanistic consideration of the relevant factors where to do so would result in an unjust or unreasonable decision." *Williams v. Williams*, 373 Pa.Super. 143, 151, 540 A.2d 563, 567 (1988).

■ In the instant case, the trial court awarded alimony to appellee "in a sum equal to the monthly payments required to meet the mortgage obligations on the marital home in Huntingdon Valley and the monthly payments on the Brigantine, New Jersey property," and further ordered that the "payments shall continue until these properties are sold ... and husband-defendant is entitled to retain all rents received from the Brigantine property but he shall further be responsible ... for the upkeep of the property other than

the mortgage, interest and taxes and insurance which wife-plaintiff is responsible for through the Alimony payments received from husband-defendant." Amended adjudication and order at 11. In applying the factors listed in Section 501, the trial court stressed that appellee is a secretary with limited skills, having no computer training; has an earning capacity of $11,000.00; devoted herself as a homemaker during most of the parties' seventeen-year marriage; aided appellant in his law practice; and cleaned the bar property and Brigantine property for rental use. By contrast, the trial court found that appellant is an attorney employed by the School District of Philadelphia with a salary of approximately $45,000.00, having highly marketable skills and the ability "to acquire substantial capital assets." Opinion at 10. In addition, the alimony award provides for the preservation of a marital asset that, in turn, generates rental income for appellant. In the light of foregoing, we find the trial court entered a just and reasonable order.

Appellant also challenges the alimony award on the basis of appellee's marital misconduct. Initially, we note that marital misconduct is not a bar to an award of alimony. It is but one of the many factors to be considered by the trial court in making its determination. Moreover, its significance is lessened by the fact that it is one of fourteen factors. In the instant case, we find the trial court did not abuse its discretion in attaching no weight to appellee's marital misconduct. The trial court found that appellant, himself, was guilty of marital misconduct. In addition, on more than one occasion, he forgave appellee's conduct and also permitted appellee to engage in extramarital relationships. Given these circumstances, we find no error.

Finally, appellant asserts that the trial court erred in awarding counsel fees.

In determining the propriety of an award of counsel fees, we also utilize an abuse of discretion standard of review. However, counsel fees are not awarded automatically. "Actual need must be shown in order to justify an award." Counsel fees are appropriate when necessary to

put the parties "on a par" in defending their rights or in allowing a dependent spouse to maintain or defend an action for divorce.

*Johnson,* 365 Pa.Super. at 415, 529 A.2d at 1126 (citations omitted). Moreover, in applying the abuse of discretion standard, we do not usurp the trial court's duty as fact finder. *Ruth v. Ruth,* 316 Pa.Super. 282, 285, 462 A.2d 1351, 1353 (1983).

■ Instantly, the trial court awarded appellee counsel fees and costs in the amount of $7,404.45.[7] In determining whether to award counsel fees, the trial court acknowledged that during a protracted and lengthy litigation, appellee provided no reasonable explanation for not returning to work until May of 1984, one year and a half after the divorce was granted. The court, however, proceeded to consider the disparity of the parties' earnings and their respective abilities to pay and found that "the husband's available income after that spent which benefitted the wife-plaintiff ... is approximately twice the wife's income." Amended adjudication at 13. In light of these findings, we find the trial court properly awarded partial counsel fees to appellee.

Order affirmed.

BECK, J., concurs.

BECK, Judge, concurring:

I join in all sections of the majority opinion except the last, dealing with the issue of attorney's fees. As to the latter issue, I concur in the majority's disposition but differ with its analysis of the relevant law.

My ground for disagreement with the majority's analysis concerns the majority's statement of the standard by which a trial court must consider a request for attorney's fees. The majority states that the standard is "actual need". I agree that in most cases purely financial considerations will

7. This amount represents one-half of counsel fees and costs found to be reasonable by the trial court.

164

ultimately dictate whether an award of fees is appropriate. *See, e.g., Diamond v. Diamond,* 360 Pa.Super. 101, 519 A.2d 1012 (1987). However, where the facts of a particular case indicate the presence of considerations other than or in addition to financial ones, the trial court may consider those in awarding counsel fees. *See Johnson v. Johnson,* 365 Pa.Super. 409, 529 A.2d 1123 (1987) (Beck, J., concurring); *Williams v. Williams,* 373 Pa.Super. 143, 540 A.2d 563 (1988). As I stated in my concurrence to *Johnson,* application of a standard that looks to actual need alone will improperly restrict the court in those cases where other factors, such as conduct by one party resulting in a materially increased fee expenditure by the other, are relevant. *Johnson,* 365 Pa.Super. at 421–24, 529 A.2d at 1129–30 (Beck, J., concurring).

In this case, I agree that wife merited the limited counsel fees award she received. Since there are no equitable considerations that would militate to the contrary, I concur in the majority's affirmance of the counsel fees award.