447 A.2d 1025

**L. Rex BICKLEY, Appellant,**

v.

**Rebecca L. BICKLEY.**

**Rebecca L. BICKLEY, Appellant,**

v.

**L. Rex BICKLEY.**

Superior Court of Pennsylvania.

Argued Dec. 1, 1981.

Filed July 9, 1982.

398

Luther E. Milspaw and Marvin Beshore, Harrisburg, for appellant (at Nos. 240 and 157) and for appellee (at No. 160).

Bonnie D. Menaker, Harrisburg, for appellant (at No. 160) and for appellee (at Nos. 240 and 157).

Before BROSKY, WIEAND and MONTEMURO, JJ.

MONTEMURO, Judge:

The present appeal is a consolidation of two actions brought in the Court of Common Pleas of Dauphin County,

on related issues of support and divorce. No. 240 Harrisburg, 1980 was an appeal from a support order entered November 28, 1980; Nos. 157, 160 Harrisburg, 1981 is an appeal from a divorce order entered April 22, 1981.

As to the support issue, it appears that appellee's objection to jurisdiction must prevail. The support order was entered on November 28, 1980 at a time when 62 P.S. § 2043.35(f) and Pa.R.C.P. 1038(d) set forth the procedural requirements in excepting to and appealing from such an order.

A panel of this court in *Paul v. Paul,* 281 Pa.Super. 202, 421 A.2d 1219 (1980), stated that "exceptions to an order for support must be filed in order to preserve objections for appeal." *Id.* at 208.

The Rules were thereafter changed to provide that exceptions are *not* a prerequisite to preservation of objections on appeal, Pa.R.C.P. 1910.11(k). That provision, however, was not valid at the time this appeal was taken. Therefore, we must quash the appeal at No. 240 of 1980.

We next consider the issues presented upon appeal from the holding of the court below in the matters of divorce, alimony *pendente lite* and alimony.

The parties lived together for two years prior to their marriage in February of 1973. Appellant-husband had a bachelor's degree in political science before they met and was employed as a social worker in Harrisburg during the first two years of the liaison. The appellee-wife worked in a day-care center and had completed one semester of college before the marriage.

Appellant was accepted into Antioch Law School in Falls Church, Virginia. He began his first year in the fall of 1973, simultaneously with the birth of the daughter of the marriage, Lee Saara.

The parties were supported through the law school years in large part by the appellee's income from daycare of young children, but also from the contributions of relatives and federal programs.

One week after the appellant's graduation from law school, he delivered appellee and their child to the appellee's parents' home and moved into the home of another woman.

By August of 1976, appellant was employed as a law clerk with the Pennsylvania Department of Revenue.

In November of 1976, the parties signed a Separation Agreement. What little property they had was divided, and custody of Saara was given to the appellee. The only matters contained in this Agreement which are now relevant to this appeal surround the provisions affecting support and alimony. A related argument of the appellant concerns a letter written by appellee's counsel before the Agreement was executed and disregarded by the Master and the lower court under the parol evidence rule.

The Master's recommendation to the court awarded alimony *pendente lite* to the appellee in the amount of $100 per week, alimony of $50 per week until completion of the appellee's graduate program or December 31, 1982, whichever was earlier, and all counsel fees involved in the divorce and support matters. Appellant excepted to the Master's Report. The matter was argued before the court and following argument the court entered an order affirming the awards of alimony and alimony *pendente lite* as recommended by the Master, but allowing only half of the recommended fee for attorney's services rendered by counsel for appellee. Both parties appealed from that order.[1] We affirm the lower court for the reasons which follow.

The Separation Agreement written in 1976 was drafted in a different era of the divorce law of this Commonwealth. Under former law, appellant's chances of winning a contested divorce action were very slim indeed. Claims for support of appellee were unavoidable so long as the legal marriage bonds endured, and appellant's hope of eventual divorce and release from long-term spousal support payments depended upon appellee's cooperation.

1. Despite the cross-appeals which make both husband and wife appellant and appellee, we shall use the term "appellant" for husband and "appellee" for wife.

It was in that context that appellant agreed to pay $100 per week for the support of appellee and their child, a sum which could be increased, in accordance with the terms of the Agreement, "up to ⅔ of husband's net income", and which was subject to yearly review for cost-of-living increases. We note that appellee never sought any increase prior to appellant's unilateral decision to decrease support, although inflation between 1976 and 1980 greatly affected the buying power of that $100 per week.

For the next few years appellee sought her college degree and appellant continued in his job with the Department of Revenue. Appellant's new household with his paramour increased by two more children. Appellant faithfully paid his support obligations to appellee and their child.

In the spring of 1980, appellant decided to leave his steady employment and begin a law practice of his own. As a consequence his income decreased. Appellee completed her college degree, and entered a Masters Program which her advisor assured her was necessary for employability in her chosen field.

On July 1, 1980, the new Divorce Code took effect. Appellee, clearly with the understanding that appellant was now entitled to a divorce under the three-year-separation provisions,[2] filed for divorce herself, and requested, *inter alia*, permanent alimony, alimony *pendente lite*, and attorney's fees. In August of 1980, appellant decreased his support payments under the agreement to $30 a week, which he decided was a fair sum for the support of his child. Appellee filed an action for non-support, and the court reinstated the $100 per week payments under threat of contempt. The appeal from that decision was quashed, *supra* this opinion.

The parties went before a Master on the divorce issues, who put forth recommendations which were largely incorporated by the lower court's decree. The court's review was

2. 23 Purdon's Statutes § 201(d)(1), P.L. 63, No. 26, April 2, 1980, effective in 90 days.

not perfunctory, however, and the attorney's fee award as recommended by the master was reduced by one half.

As mentioned *supra*, the Master in Divorce also awarded appellee the sum of $100.00 per week as "alimony *pendente lite*" from August (the month of appellant's unilateral reduction of the support order) until the date of divorce. This was clearly made identical with the now-outstanding order in support, as the Master stated that child support was included and that appellant was to receive credit for support payments from the Domestic Relations office. Therefore, during this marriage, the sum of $100.00 per week was awarded appellee.

Appellant argues that the court below abused its discretion in awarding alimony *pendente lite* to appellee. He asserts that appellee's request for alimony *pendente lite* was "an election of remedies" which "served to vacate the support order." The effect of the election, according to appellant, required the court, before making a decision, to conduct "an examination of one spouse's needs and the ability of the other spouse to pay," factors which he insists the lower court never considered. We disagree.

The support in this instance was originally instated under the Separation Agreement of the parties and had been reaffirmed by a support order of the court in August of 1980, before the master began hearings. As noted *supra*, that order was never excepted to by the appellant.

The recommendation of the master and the order of the lower court made alimony *pendente lite* in every sense identical with this already existing support order. This presents no problem of an "election of remedies;" it is a simple insistence that until termination of this marriage, support in the amount of $100.00 for wife and child continued to be due. At date of divorce, support for the child became $30.00, and alimony of limited duration in the amount of $50.00 was awarded to the wife.

The support of $100.00 for wife and child was always proper until the marriage terminated. We affirm the deci-

sion of the court below which merely merged the outstanding order and the order for alimony *pendente lite* to present one reasonable, agreed sum for payment.

Appellant also argues that the appellee orally promised an absolute divorce and a cessation of support after her college graduation. He offered as Exhibit "10" (R.93a) a letter of appellee's attorney outlining appellee's requests for items to be included in the agreement. It is true that the letter mentions support in terms of four years; it is also true that the letter makes other suggestions which were altered. We note as well that appellant's counter-suggestions scribbled onto this letter were altered in the final agreement as executed.

The parol evidence rule expressly eliminates from consideration by the fact-finder all language used in the negotiating stages prior to actual execution of a contract.

When two parties have made a contract and have expressed it in a writing to which they have both assented as the complete and accurate integration of that contract, evidence, whether parol or otherwise, of antecedent understandings and negotiations will not be admitted for the purpose of varying or contradicting the writing. This is in substance what is called the 'parol evidence rule,' a rule that scarcely deserves to be called a rule of evidence of any kind, and a rule that is as truly applicable to written evidence as to parol evidence." *Corbin on Contracts*, § 573.

It is true that

[w]here it is clear from a reading of written instrument that it does not contain the entire contract between the parties, parol evidence may be introduced as an aid to the writing in explaining the meaning the parties intended that it should convey. Moreover, *where a document is silent on a particular subject,* it may be proved by parol evidence of what took place at the time of execution, and that a *prior separate oral agreement not inconsistent with the terms of the document* or any implied agreement growing out of it was not intended to be abrogated.

*Fenner v. Smyth*, 62 Pa.Super. 538 (1916); *White v. Black*, 14 Pa.Super. 459 (1900). (Emphasis supplied)

■ Appellant argues that as the Separation Agreement does not in its final form state a date upon which support will cease, he should be permitted to use the attorney's letter as proof of appellee's alleged prior oral promises. We cannot agree.

On its face the instrument does not appear to be defective, for the obvious reasonable period of support to a wife under a separation agreement would be the duration of the marriage. We cannot infer any other intent from a lack of specific language. The court was not obliged to re-write the term for support payments under the Agreement.

Appellant also urges error in the award of alimony in the amount of $50.00 per week to appellee for a period of less than two years during which appellee will complete her graduate degree. The provisions for alimony are set forth in 23 P.S. § 501. In pertinent part, the law states as follows:

§ 501. Alimony [56]

(a) The court may allow alimony, as it deems reasonable, to either party, only if it finds that the party seeking alimony:

(1) lacks sufficient property, including but not limited to any property distributed pursuant to Chapter 4, to provide for his or her reasonable needs; and

(2) is unable to support himself or herself through appropriate employment.

(b) In determining whether alimony is necessary, and in determining the nature, amount, duration, and manner of payment of alimony, the court shall consider all relevant factors including:

(1) The relative earnings and earning capacities of the parties.

(2) The ages, and the physical, mental and emotional conditions of the parties.

(3) The sources of income of both parties including but not limited to medical, retirement, insurance or other benefits.

(4) The expectancies and inheritances of the parties.

(5) The duration of the marriage.

(6) The contribution by one party to the education, training or increased earning power of the other party.

(7) The extent to which it would be inappropriate for a party, because said party will be custodian of a minor child, to seek employment outside the home.

(8) The standard of living of the parties established during the marriage.

(9) The relative education of the parties and the time necessary to acquire sufficient education or training to enable the party seeking alimony to find appropriate employment.

(10) The relative assets and liabilities of the parties.

(11) The property brought to the marriage by either party.

(12) The contribution of a spouse as homemaker.

(13) The relative needs of the parties.

(14) The marital misconduct of either of the parties during the marriage; however, the marital misconduct of either of the parties during separation subsequent to the filing of a divorce complaint shall not be considered by the court in its determinations relative to alimony.

(c) Unless the ability of the party seeking the alimony to provide for his or her reasonable needs through employment is substantially diminished by reason of age, physical, mental or emotional condition, custody of minor children, or other compelling impediment to gainful employment, the court in ordering alimony shall limit the duration of the order to a period of time which is reasonable for the purpose of allowing the party seeking alimony to meet his or her reasonable needs by:

(1) obtaining appropriate employment;  or

(2) developing an appropriate employable skill.

(d) In an order made under this section the court shall set forth the reason or reasons for its denial or award of alimony and the amount thereof.

The master sensibly applied and interpreted these provisions in the light of § 102, which sets forth the legislative finds and intent. Specifically, the master depended upon the following wording at § 102(a):

(4) Mitigate the harm to the spouses and their children caused by the legal dissolution of the marriage ...

(6) Effectuate economic justice between the parties who are divorced or separated and grant or withhold alimony according to the actual need and ability to pay of the parties ...

Appellant contends that in order to be eligible for alimony, a dependent spouse must meet the *threshold requirements* of § 501(a)(1)–(2), see citation *supra*, after which the court could look at the provisions of § 501(b). However, he himself is inconsistent in his argument, for he urges the "standard of living of the parties during the marriage", § 501(b)(8) as a measure to determine appellee's ability to support herself under the "appropriate employment" standard of § 501(a)(2).

Upon review of the problem, we conclude that it is not possible to determine what is a "reasonable need" under § 501(a)(1) or "appropriate employment" under § 501(a)(2) without reference to the specific facts of the case as they fit the relevant factors listed in § 501(b)(1)–(14). The wording of § 501(b) itself acknowledges this interrelationship in stating that the fourteen listed factors are to be used "in determining *whether* alimony is necessary", which is identical to the "threshold questions" of § 501(a)(1) and (2). [Emphasis supplied]

■ We hold, therefore, that the provisions of § 501 are to be read in conjunction with each other and with the intent and purposes of the act as a whole, so that economic justice results, and harm to the spouses and children is mitigated.

The parties in the instant matter do not seriously dispute issues under § 501(a)(1), since the property they had to divide was inconsiderable. Appellant, however, does contend that appellee has the ability to support herself with "appropriate employment", and urges that his own financial condition was not considered below.

■ Upon review, however, we find that the master and the lower court did consider appellant's support payments to his estranged wife for four years, his loans, the personal property distribution, and the duration of the marriage. Most particularly, the master and the lower court focused upon the fact that appellant had a well-established earning potential.

Our case law on support matters has established that a husband cannot elect to change his earning potential to a much lower level and then escape his duties of support. *Commonwealth ex rel. McNulty v. McNulty*, 226 Pa.Super. 247, 311 A.2d 701 (1973); *Commonwealth ex rel. Haley v. Haley*, 199 Pa.Super. 235, 184 A.2d 155 (1972). Although we are now discussing rehabilitative alimony, rather than support, we see no reason why the same principle should not hold true. We understand the importance to a young attorney of starting his own firm, but his legal obligations remain the same whether he plunges ahead or waits a prudent eighteen months longer until his alimony obligations have ceased.

Additionally, we note that appellant stresses the very modest circumstances enjoyed by the parties during their marriage and the relative brevity of the relationship, § 501(b)(6) and (b)(5); however, the fact-finders below stressed the fact that it was a first marriage; that appellee has custodial duties to a young child (b)(7); and that she contributed in an important way to the education and earning power appellant now possesses (b)(6).

As a practical matter, appellee is not being granted alimony in any lavish style. The fifty dollars a week for eighteen to twenty months will enable her to obtain her graduate

degree, and become employable at a higher level, which will effect a result of economic justice in accord with the Divorce Code's intent.

The future of the child of the parties, a concern under § 102, is thereby greatly enhanced. The harm caused to this child by dissolution of the marriage will obviously be mitigated if her custodial parent enjoys a standard of living commensurate with that of her non-custodial parent. We can also, with reasonable certainty, predict that appellant too will, in the final analysis, benefit, as the mother of his child will be able to contribute more to her support, thus reducing his own obligations.

The final issue on appeal is the award of attorney's fees in this matter. The master below awarded to appellee[3] full payment of all her fees to her attorney, based on the inclusive language of the original separation agreement, which provided that appellant would assume counsel fees and costs

> ... incurred by himself and his wife in connection with the preparation of this agreement, the division of jointly-held property, the support payments, and subsequent divorce proceeding.

The court, upon review, looked to the Divorce Code provisions for counsel fees and reasoned that counsel fees were intended under the statute to be reasonable and based upon actual relative economic conditions and ability to pay, rather than upon the "earning potential" of the supporting spouse. It therefore reduced the master's award by half, and made appellee responsible for the amount not covered.

Were it not for the agreement executed by the parties, we would stop here and hold that under the circumstances we find no abuse of discretion. However, we must discuss the effect of that agreement and our reasons for adhering to the reasoning of the lower court.

---

**3.** Once again, we note that both wife and husband are "appellee" for part of this case. We will continue to use that term to designate the wife, however.

When these two parties signed this agreement in 1976, appellant could never have received a contested divorce, and any legal expenses attached to a consensual divorce must have been more reasonable than those the parties now face. Appellant might have had to make settlement of a substantial nature to assure consent, but at time of the parties' execution of the clause making him responsible for the fees for a divorce action, no one contemplated the kind of attorney involvement we see here.

*Corbin on Contracts* discusses the problems courts face when a "supervening event" causes "material frustration" of the purposes of the parties to an agreement.

Often however, such events occur without the fault of either party, causing loss and preventing gains. Who then must stand the loss or bear the disappointment? If a division of losses is to be made, in what proportion? Courts have had to answer these questions. The cases are numerous, various in character, and not wholly consistent in reasoning or in decision. In each case, the court has determined who must bear and who must pay. 6 *Id.*, at 376 (1951).

The provision in the Separation Agreement was for the purpose of allocating attorney's fees in an <u>un</u>contested divorce. Both parties signed under that supposition. Although the appellant could fulfil the contractual language to the letter by paying all fees for the appellee's attorney, the original "purpose" of the clause has been "frustrated" by a "supervening event"—the first substantial change in divorce law in this state in two centuries.

■ We cannot say that the court below was abusing its discretion in reforming the agreement of the parties to make a proportionate division of the fees owed to appellee's attorney. It was following a well-worn path of determining how to allocate responsibilities when an unforeseeable event occurs. By placing the matter under the new Divorce Code, weighing the actual financial circumstances of the parties, and to the best of its ability, effectuating economic justice, the court has reached a reasonable solution, and we affirm.

410

Therefore, as to the appeal from the support order of November 28, 1980, we quash. As to the appeals from the order in divorce and related issues of April 22, 1981, we affirm.

WIEAND, J., concurs in the result.