520 A.2d 15

**Arthur J. HODGE, Appellant,**

v.

**Patricia HODGE, Appellee.**

Supreme Court of Pennsylvania.

Argued May 16, 1986.

Decided Dec. 29, 1986.

Reargument Denied April 23, 1987.

Thomas B. Rutter, Mary B. Stein, Philadelphia, for appellant.

Charles E. Friedman, Harrisburg, for appellee.

Before NIX, C.J., and LARSEN, FLAHERTY McDERMOTT, HUTCHINSON, ZAPPALA and PAPADAKOS, JJ.

266

**OPINION**

ZAPPALA, Justice.

We granted cross-petitions for allowance of appeal to determine whether or not a medical license is "marital property" under our Divorce Code [1] and whether the award of alimony was proper. The relevant facts are as follows:

The parties were married in 1967. At that time, Dr. Hodge was a student of medical technology at St. Luke's Hospital in Bethlehem, Pennsylvania while Mrs. Hodge was a clinical instructor there. Prior to the marriage, Dr. Hodge enlisted in the United States Army Medical Service Corps and was sent to Fort Hood, Texas, where he was stationed until 1970. While in Fort Hood, Texas, Mrs. Hodge served as a laboratory technologist at Darnell Army Hospital. After his discharge, Dr. Hodge became employed as a serologist with Ortho-Pharmaceutical in Raritan, New Jersey where he remained for approximately nine months. His earnings at that time were $6,938.00 a year.

In January, 1971, Dr. Hodge enrolled in the medical program at the medical school of the University of Guadalajara, Mexico. During his first year of medical school, both Mrs. Hodge and their daughter remained in Pennsylvania where Mrs. Hodge worked to support the family and to facilitate Dr. Hodge's education. Mrs. Hodge and their daughter joined Dr. Hodge in Mexico for the last three years of medical school.

The Hodge family returned to Pennsylvania in January, 1975, where Dr. Hodge undertook his required fifth year of medical training at Harrisburg Poly-clinic Hospital. After successful completion of this required residency program, Dr. Hodge took an internship at the same hospital. During 1975–1976, Dr. Hodge lived at the residents' quarters while Mrs. Hodge and their three children resided in a rented home in Schuylkill County.

Dr. Hodge entered a two-year residency program specializing in internal medicine in January 1977. Thereafter, he

1. Act of April 2, 1980, P.L. 63, No. 26, 23 P.S. § 101, et seq.

received his license to practice medicine in February 1977. On August 27, 1977, Dr. Hodge informed his wife that he no longer wished to continue their marital relationship. Thereafter, Mrs. Hodge commenced an action in divorce in Schuylkill County on December 26, 1978. Action on this complaint remained dormant, resulting in Dr. Hodge filing a complaint under section 201(d) of the Divorce Code on March 19, 1981. After preliminary objections of Mrs. Hodge were dismissed, a divorce decree was entered October 9, 1981, with the court retaining jurisdiction over the issues of support, alimony and equitable distribution.

The trial court appointed a special master to take testimony and make recommendations with regard to alimony and the division of property. After taking testimony, the master rejected Mrs. Hodge's claim that Dr. Hodge's medical license was 'marital property' under the Divorce Code, and recommended $100 a week alimony for Mrs. Hodge until September 26, 1994. Mrs. Hodge filed exceptions to the master's determination that the medical license was not 'marital property', while Dr. Hodge excepted to the determination of alimony. After hearing arguments on the exceptions, the trial judge approved the recommendations of the special master and entered a final decree.

Both parties filed appeals to the Superior Court which affirmed. 337 Pa.Super. 151, 486 A.2d 951. (*Del Sole* and Montemuro, Wickersham Concurring and Dissenting). We thereafter granted allocatur and in Part I affirm the Superior Court by a majority while in Part II affirm by an equally divided Court.

## PART I

Under the Divorce Code, the court shall equitably divide the "marital property" between the parties. 23 P.S. § 401(d). The Code defines "marital property" as "all property acquired by either party during the marriage" subject to certain enumerated exceptions. 23 P.S. § 401(e). Furthermore, subsection (f) states that "[a]ll property, whether real or personal, acquired by either party during the mar-

riage is presumed to be marital property." 23 P.S. § 401(f). As can be seen from reviewing these sections of the Divorce Code, implicit in any discussion of whether an item is "marital property" under the Divorce Code, is a preliminary determination of whether that item is "property". Therefore, we must first determine whether a professional license, such as a medical license, is in fact "property", before determining whether it is "marital property" under the Divorce Code.

Relying upon *In re Marriage of Graham*, 194 Colo. 429, 574 P.2d 75 (1978), the Superior Court concluded that "... increased earning capacity is neither real or personal property in any classic sense of the word." 337 Pa.Super. at 156, 486 A.2d at 953. In *Graham*, the Colorado Supreme Court held:

> An educational degree, such as an M.B.A., is simply not encompassed even by the broad views of the concept of "property". It does not have an exchange value or any objective transferrable value on an open market. It is personal to the holder. It terminates on death of the holder and is not inheritable. It cannot be assigned, sold, transferred, conveyed, or pledged. An advanced degree is a cumulative product of many years of previous education, combined with diligence and hard work. It may not be acquired by the mere expenditure of money. It is simply an intellectual achievement that may potentially assist in the future acquisition of property. In our view, it has none of the attributes of property in the usual sense of that term.

194 Colo. at 432, 574 P.2d at 77. (See also, *Stevens v. Stevens*, 23 Ohio St.3d 115, 492 N.E.2d 131 (1986)). We are in accord with the Colorado Supreme Court's legal analysis rejecting the argument that an advanced degree is "property". Since a professional license does not have the attributes of property, it cannot be deemed "property" in the classical sense. Nor does the Divorce Code demonstrate any legislative intent to give "property" a different meaning than its traditional definition. Unless otherwise de-

fined, words must be interpreted according to common usage. 1 Pa.C.S. § 1903(a). Therefore, we hold that an advanced degree, such as a medical license, is not "property" under our Divorce Code.

■ Even if we were to conclude that a professional license is property, it is clear that the increased earning capacity attained as a result of a professional license does not come within the statutory purview of section 401(e). Specifically, section 401(e) is predicated upon the property being "acquired" during the marriage. In instances such as the one now before the Court, the real value being sought is not the diploma but the *future* earned income of the former spouse which will be attained as the result of the advanced degree. The property being sought is actually acquired subsequent to the parties' separation. Thus, the future income sought cannot be "marital property" because it has not yet been earned. If it has not been earned, it has not been acquired during the marriage. Furthermore, the contributions made by one spouse to another spouse's advanced degree plays only a small part in the overall achievement. There is no question that in cases such as the one now before this Court, one spouse very often struggles to support the other spouse and the family while the non-working spouse is completing his education and post-education training. However, we must not forget that others, including the student-spouse, have made sacrifices to aid him in achieving his advanced degree and increased earned income. Thus, it is inherently unfair to compensate one spouse, to the exclusion of all other contributing persons, for the achievements of the other spouse.

A majority of this Court, therefore, holds that a professional license is not "marital property" subject to equitable distribution under the Divorce Code. Since a professional license is not property and any future earnings are not acquired during the marriage, the lower courts were correct in excluding Dr. Hodge's future earnings attained as a result of his medical degree from equitable distribution under the Divorce Code.

## PART II

Next, Dr. Hodge argues it was improper to award Mrs. Hodge alimony for fourteen years. Section 501(a) states:

(a) The court may allow alimony, as it deems reasonable, to either party, only if it finds that the party seeking alimony:

(1) lacks sufficient property, including but not limited to any property distributed pursuant to Chapter 4, to provide for his or her reasonable needs; and

(2) is unable to support himself or herself through appropriate employment.

Subsection (b) lists the factors to be considered in determining whether alimony is necessary and in determining the nature, duration and amount of any such award.

In awarding Mrs. Hodge fourteen years of alimony, the trial court adopted the special master's conclusion that the "only remaining method which our law allows by which economic responsibility can be equitably adjusted under such circumstances is to impose an order of alimony upon plaintiff for the benefit of defendant." (R. 16a). The trial court stated that this "equitable adjustment (is) needed in order to place some economic responsibility on the plaintiff for the defendant's sacrifices made during the marriage." (Slip opinion p. 27). Superior Court affirmed finding no abuse of discretion on the part of the trial court. We cannot agree.

Although the Divorce Code was adopted with the intent to "effectuate economic justice", 23 P.S. § 102(a)(6), we cannot ignore that alimony was intended to be based on "actual need and ability to pay." *Id.* This is clear from reading sections 501(a)(1) and (2) and 501(c). The primary purpose of alimony is to provide one spouse with sufficient income to obtain the necessities of life, not to punish the other spouse. *Semasek v. Semasek*, 331 Pa.Super. 1, 479 A.2d 1047, (1984), rev'd on other grounds 509 Pa. 282, 502 A.2d 109 (1985). Any alimony order must be based on need. Although both parents have an equal duty to support their children, *Conway v. Dana*, 456 Pa. 536, 318 A.2d 324 (1974),

the fact that one parent is a student and not contributing support for the children does not result in a future claim by the other spouse for the unpaid past support. Therefore, the purpose of alimony under our statute is rehabilitation not reimbursement. *Pacella v. Pacella*, 342 Pa. Super. 178, 492 A.2d 707 (1985). As Judge Wieand has astutely stated:

> The duty of support is imposed by rule of law on both spouses. Compliance with this legal duty does not result in unjust enrichment to the other. Marriage is for better or worse. It is not entered with a conscious intent that at some future time there will be an accounting of and reimbursement for moneys contributed to the support of the family. To inject such a concept would, in my judgment, have far-reaching and unfortunate consequences. If I am correct in my view regarding the duty of spousal support, then it is difficult to perceive good reason for creating an exception which would reimburse a spouse for support contributed while the other is attending an institution of higher learning or otherwise obtaining advanced training.

*Lehmicke v. Lehmicke*, 339 Pa.Super. 559, 573–74, 489 A.2d 782, 790 (1985) (Wieand, J., Concurring and Dissenting). Accordingly, after a spouse has established a need for alimony, the court may then take into consideration those expenses incurred in excess of the traditional support obligation (i.e., tuition, books, fees, etc.), in determining an alimony award.

How then should the factors listed in section 501(b) be applied to section 501(a)? In applying section 501(b), the trial court must keep in mind the purpose of alimony, i.e., to provide support when there exists a lack of sufficient property and appropriate employment to provide for reasonable needs. Since section 501(b) sets forth factors to be considered in determining whether alimony is necessary and in determining the amount, duration and manner of payment, it is clear that certain factors are only relevant to a determination of entitlement while others are relevant to the amount, duration and manner of payment. Thus, when

a trial court considers these enumerated factors in determining whether alimony is appropriate, the court must keep in mind the purpose of alimony as set forth in section 501(a) in evaluating whether a certain factor is relevant. A factor may be important in determining the duration of alimony a spouse should receive, but be irrelevant in making the initial determination of whether that spouse is entitled to alimony at all. To interpret section 501 otherwise would virtually eliminate the introductory language of section 501(b), that "[i]n determining whether alimony is necessary," the court must consider the factors enumerated therein. 23 P.S. § 501(b).[2]

Applying this reasoning to the present appeal, it is evident that both the special master and the lower courts applied section 501 incorrectly in determining the award of alimony. Both the special master and the trial court attempted to effectuate economic equality through the use of alimony. Although an honorable attempt to compensate the wife for lack of marital property, it clearly was improper. Since the alimony award was based upon an erroneous application of the statute, this matter should be remanded to the trial court for a redetermination of the issue of alimony. On remand, the trial court must first determine whether Mrs. Hodge is entitled to alimony, keeping in mind that alimony is intended to rehabilitate a spouse not to provide a source of economic equalization, before determining an appropriate amount and duration.

■ Accordingly, Part I of this opinion being joined by a majority of the Court, affirms the opinion and order of the Superior Court with respect to its determination that a medical license is not marital property. The Court being equally divided, with regard to Part II of this opinion, we affirm the Superior Court on the issue of alimony for Appellee.

2. This analysis is in complete accord with previous Superior Court decisions rejecting the theory that section 501(a) sets forth a threshold which must be met before considering section 501(b). (*See, Hess v. Hess,* 327 Pa.Super. 279, 475 A.2d 796 (1984) and *Bickley v. Bickley,* 301 Pa.Super. 396, 447 A.2d 1025 (1982).

McDERMOTT, J., did not participate in the consideration or decision of this case.

HUTCHINSON, J., filed a concurring and dissenting opinion in which PAPADAKOS, J., joined.

LARSEN, J., filed a dissenting opinion.

HUTCHINSON, Justice, concurring and dissenting.

I concur in the result Mr. Justice Zappala reaches in Part I of his opinion, which states that a medical license acquired during a marriage and the increased earning capacity arising therefrom do not constitute marital property or an otherwise divisible asset of the marriage subject to equitable distribution. Analysis of Chapters 4 (Property Rights) and 5 (Alimony and Support) of our Divorce Code [1] convinces me that the legislature did not intend a medical license or resultant increased earning capacity to be considered such an asset. Instead, the legislature provided that "[t]he contribution by one party to the education, training, or increased earning power of the other party" should be a *factor* considered in the equitable distribution of marital property, 23 P.S. § 401(d)(4), *and* in the determination of the necessity for, and the nature and duration of, alimony, 23 P.S. § 501(b)(6). The inclusion of this factor in both of these chapters makes it clear that the legislature intended to give our trial courts the flexibility needed to fashion a fair and just economic resolution when the parties acquire substantial assets subject to distribution, and when, as here, they have few such assets at the time of divorce.[2] Thus, the lower courts properly rejected the claim that Dr.

1. Act of April 2, 1980, P.L. 63, No. 26, 23 P.S. §§ 101–801 (Supp.1986).

2. We do not today have before us the third possible situation, where the parties have acquired few assets but alimony is not available to the spouse who contributed toward the other's education because he or she is self-supporting and rehabilitation into the work place is not necessary. Such a case has been before Superior Court, which approved a remedy under Section 401(c) of the Divorce Code. That Section provides, in relevant part: "In all matrimonial causes, the court shall have full equity power ... to protect the interests of the parties ... and may grant such other relief or remedy as equity and justice require against either party...." 23 P.S. § 401(c). *See Lehmicke v. Lehmicke*, 339 Pa.Superior Ct. 559, 489 A.2d 782 (1985).

Hodge's medical license constitutes marital property subject to equitable distribution.

I dissent, however, from the reasoning in Part II of Mr. Justice Zappala's opinion and his conclusion that the lower courts incorrectly applied Section 501 of the Divorce Code in determining and reviewing the alimony award. Precisely because the parties had few assets subject to distribution, the courts correctly considered Mrs. Hodge's contributions to her husband's professional education and resultant increased earning power in awarding her alimony of $100 per week for fourteen years under Section 501. The propriety of this award is the issue raised in appellant's cross-appeal by allowance.

I would begin by noting that the scope of appellate review in questions of alimony is limited to a determination of whether the lower court abused its discretion. *Remick v. Remick*, 310 Pa.Superior Ct. 23, 456 A.2d 163 (1983). I find no indication here that Common Pleas abused its discretion in awarding Mrs. Hodge alimony for fourteen years.

In analyzing Chapter 5 of the Divorce Code, Mr. Justice Zappala has construed Subsections (a) and (b) of Section 501 in a manner that invites the application of the two conditions in Section 501(a) as threshold requirements for entitlement to alimony. I believe this construction is erroneous. Section 501(a) provides:

(a) The court may allow alimony, as it deems reasonable, to either party, only if it finds that the party seeking alimony:

(1) lacks sufficient property, including but not limited to any property distributed pursuant to Chapter 4, to provide for his or her reasonable needs; and

(2) is unable to support himself or herself through appropriate employment.

23 P.S. § 501(a).

At first blush, the use of the word "only" in Section 501(a) along with the word "and" as a connector between 501(a)(1) and 501(a)(2) would seem to support Mr. Justice

Zappala's position. However, Section 501(b) of the Divorce Code provides:

> (b) In determining whether alimony is necessary, and in determining the nature, amount, duration, and manner of payment of alimony, the court shall consider all relevant factors including: ....[3]

23 P.S. § 501(b). Thus, Section 501(b) requires a consideration of all relevant factors in making the determination of whether alimony is "necessary". Obviously, if it is necessary a court "may allow" alimony in an amount it "deems reasonable". *See* Section 501(a), *supra*.

Mr. Justice Zappala states that the analysis in Part II of his opinion is in accord with *Hess v. Hess*, 327 Pa.Superior Ct. 279, 475 A.2d 796 (1984) and *Bickley v. Bickley*, 301 Pa.Superior Ct. 396, 447 A.2d 1025 (1982), in which Superior Court held that the two conditions set forth in Section 501(a) do *not* establish threshold requirements for entitlement to

---

**3.** The factors to be considered by the court include:

(1) The relative earnings and earning capacities of the parties.

(2) The ages, and the physical, mental and emotional conditions of the parties.

(3) The sources of income of both parties including but not limited to medical, retirement, insurance of other benefits.

(4) The expectancies and inheritances of the parties.

(5) The duration of the marriage.

(6) The contribution by one party to the education, training or increased earning power of the other party.

(7) The extent to which it would be inappropriate for a party, because said party will be custodian of a minor child, to seek employment outside the home.

(8) The standard of living of the parties established during the marriage.

(9) The relative education of the parties and the time necessary to acquire sufficient education or training to enable the party seeking alimony to find appropriate employment.

(10) The relative assets and liabilities of the parties.

(11) The property brought to the marriage by either party.

(12) The contribution of a spouse as homemaker.

(13) The relative needs of the parties.

(14) The marital misconduct of either of the parties during the marriage; however, the marital misconduct of either of the parties during separation subsequent to the filing of a divorce complaint shall not be considered by the court in its determinations relative to alimony.

23 P.S. § 501(b).

alimony. However, in reading Section 501(a) as embodying the purpose of alimony and then requiring the master and trial court to apply the factors enumerated in Section 501(b) only in light of this purpose, Mr. Justice Zappala accords paramount status to Section 501(a). As applied to this record, his reasoning recreates a threshold for entitlement to alimony. I believe that reading is contrary to sound principles of statutory construction and is out of line with the legislative intent expressed generally in Section 102 of the Divorce Code[4] and specifically in Subsection (a)(6), which reads:

> (a) The family is the basic unit in society and the protection and preservation of the family is of paramount public concern. Therefore, it is hereby declared to be the policy of the Commonwealth of Pennsylvania to:
>
> .    .    .    .    .
>
> (6) Effectuate economic justice between parties who are divorced or separated *and* grant or withhold alimony according to the actual need and ability to pay of the

**4.** Section 102 of the Divorce Code provides:
> (a) The family is the basic unit in society and the protection and preservation of the family is of paramount public concern. Therefore, it is hereby declared to be the policy of the Commonwealth of Pennsylvania to:
>    (1) Make the law for legal dissolution of marriage effective for dealing with the realities of matrimonial experience.
>    (2) Encourage and effect reconciliation and settlement of differences between spouses, especially where children are involved.
>    (3) Give primary consideration to the welfare of the family rather than the vindication of private rights or the punishment of matrimonial wrongs.
>    (4) Mitigate the harm to the spouses and their children caused by the legal dissolution of the marriage.
>    (5) Seek causes rather than symptoms of family disintegration and cooperate with and utilize the resources available to deal with family problems.
>    (6) Effectuate economic justice between parties who are divorced or separated and grant or withhold alimony according to the actual need and ability to pay of the parties and insure a fair and just determination and settlement of their property rights.
> (b) The objectives set forth in subsection (a) shall be considered in construing provisions of this act and shall be regarded as expressing the legislative intent.
> 23 P.S. § 102.

parties *and* insure a fair and just determination and settlement of their property rights.

23 P.S. § 102(a)(6) (emphasis added).

The object of all statutory interpretation is to ascertain and effectuate the intention of the legislature. 1 Pa.C.S. § 1921(a). Section 102(b) of our Divorce Code explicitly states that the objectives set forth in Subsection (a) shall be regarded as expressing the legislative intent and shall be considered in construing provisions of the Code. 23 P.S. § 102(b). Further, the language of a statute shall be construed, if possible, so as to give effect to all of the statute's provisions. 1 Pa.C.S. § 1921(a). *Commonwealth ex rel. Bagnoni v. Klemm,* 499 Pa. 566, 574, 454 A.2d 531, 535 (1982); *Commonwealth v. Butler County Mushroom Farm,* 499 Pa. 509, 513, 454 A.2d 1, 4 (1982). Therefore, Section 501 of the Divorce Code must be construed, if possible, in a way that gives effect to all of its subsections and Section 102(a) must be considered in giving effect to these subsections.

In its introductory language, Section 501(b) states that all relevant enumerated factors shall be considered *"[i]n determining whether alimony is necessary,* and in determining the nature, amount, duration, and manner of payment of alimony." 23 P.S. § 501(b) (emphasis added). This wording acknowledges the relationship between Sections 501(a) and (b); the only way to determine what is a "reasonable need" under Section 501(a)(1) or "appropriate employment" under Section 501(a)(2) is to refer to the specific facts of each case as they compare with the factors listed in Section 501(b)(1)–(14). I agree with Mr. Justice Zappala that certain of these factors are more relevant to a determination of entitlement to alimony than others which go primarily to the nature, duration, amount and manner of payment of alimony. I cannot agree with Mr. Justice Zappala's discussion of the manner in which trial courts should evaluate Section 501(b) factors, however, because it provides little guidance to these courts and invites application of the Section 501(a) conditions as threshold requirements.

I believe instead that all the 501(b) factors (except factors 5, 14 and possibly 7, which are unrelated to either need, ability to pay or the parties' current economic situation) should be used to decide whether the spouse seeking alimony is able to "provide for his or her reasonable needs" and is "unable to support himself or herself through appropriate employment", as required by Section 501(a). After need, ability and relative wealth are so determined, all of the other 501(b) factors, including (5), (7) and (14), should be considered in determining the nature, amount, duration and manner of payment of alimony. This analysis is largely in accord with Judge Beck's reasoning in *Hess v. Hess*, 327 Pa.Superior Ct. 279, 289, 475 A.2d 796, 801 (1984). Since factor (6), "[t]he contribution by one party to the education, training or increased earning power of the other party", is clearly an economic factor, such contributions are properly considered in deciding whether an award of alimony is necessary. 23 P.S. § 501(b)(6).

In the fact situation this record presents, it is not possible to effectuate economic justice if Section 501(a) is read as imposing conditions on entitlement to alimony which must be met before the factors set out in 501(b) can be considered. This is apparent when we consider: this wife's contribution to her husband's education, the couple's lack of tangible assets to divide, the interpretive and practical problems precluding consideration of the medical license as property and the resultant lifetime income benefit this husband will enjoy from that license without recompense to the spouse who sacrificed to provide the means of his obtaining that benefit. That injustice is ably shown by Mr. Justice Larsen's factual recital in his dissenting opinion.

Sections 501(a) and (b) must be read together, therefore, in determining whether alimony is necessary, keeping in mind that the purpose of the Divorce Code, as stated by the legislature and affirmed by this Court, goes beyond the granting of alimony according to the actual need and ability to pay of the parties and includes:

deal[ing] effectively with the 'realities of the matrimonial experience' by giving 'primary consideration to the wel-

fare of the family,' 'mitigat[ing] the harm to spouses and their children caused by the legal dissolution of the marriage,' and effectuating 'economic justice' as well as 'a fair and just determination and settlement of ... property rights.' 23 P.S. § 102(a).

*Bacchetta v. Bacchetta,* 498 Pa. 227, 231, 445 A.2d 1194, 1196 (1982).

I believe Mr. Justice Zappala errs in applying his modified threshold analysis to the question of whether the alimony award was excessive. Although Mr. Justice Zappala's reasoning is not entirely clear to me on this point, it would appear that his objection is to the duration of the alimony award (fourteen years) and not to the amount periodically due. Of course, $100 per week for fourteen years, or $72,800 undiscounted, is more than $100 per week for some lesser period and, thus, duration and amount are woven together in a very real sense.

I believe, however, that the nature, amount, duration and manner of payment of alimony are matters to be determined by the trial court in accordance with Sections 501(b) and (c) of the Divorce Code, which must be read together and applied in light of the particular facts of each case. Section 501(c) provides:

(c) Unless the ability of the party seeking the alimony to provide for his or her reasonable needs through employment is substantially diminished by reason of age, physical, mental or emotional condition, custody of minor children, or other compelling impediment to gainful employment, the court in ordering alimony shall limit the duration of the order to a period of time which is reasonable for the purpose of allowing the party seeking alimony to meet his or her reasonable needs by:

(1) obtaining appropriate employment; or

(2) developing an appropriate employable skill.

23 P.S. § 501(c).

As the record indicates, Mrs. Hodge is now forty-six years old. For the past ten years, she has been a homemak-

er and primary caretaker of the parties' three children, two of whom are still minors. Mrs. Hodge has not worked in her profession during this time. Further, she presented evidence that employers where she resides now require a four-year degree in medical technology rather than the two-year associate degree that she possesses. As noted by Superior Court, these "impediment[s] to gainful employment" exempt Mrs. Hodge from the general rule set forth in Section 501(c) that alimony shall be limited to a period of time that reasonably allows the party to obtain appropriate employment or develop an appropriate employable skill. 23 P.S. § 501(c). *Hodge v. Hodge,* 337 Pa.Superior Ct. 151, 158, 486 A.2d 951, 954 (1984).

The trial court must consider all relevant 501(b) factors in determining the duration of alimony. On the facts of this case, the relative earning capacities of the parties (factor 1), the ages of the parties (factor 2), the contribution by one party to the other's increased earning capacity (factor 6), the relative education of the parties and the time necessary to acquire sufficient education to enable the party seeking alimony to find appropriate employment (factor 8) and the contribution of a spouse as a homemaker (factor 12) are relevant in determining the duration of the alimony award. Moreover, factor 7, the extent to which it would be inappropriate for a party to seek employment outside the home because that party has custody of a minor child, seems especially relevant. Considering these relevant factors in light of this record, I cannot agree with Mr. Justice Zappala that Common Pleas abused its discretion in ordering alimony of $100 per week for fourteen years, the period during which the Hodge's two youngest children remain minors.

Finally, I would note that this alimony award may be modified, pursuant to Section 501(e) of the Code, if the circumstances of the parties should change. That Section provides:

> (e) Any order entered pursuant to this section is subject to further order of the court upon changed circumstances of either party of a substantial and continuing nature

whereupon such order may be modified, suspended, terminated, reinstituted, or a new order made. Any such further order shall apply only to payment accruing subsequent to the petition for the requested relief. Remarriage of the party receiving alimony shall terminate the award of alimony.

23 P.S. § 501(e). While two of his three children remain minors, I believe it entirely appropriate and fair to place the burden of pursuing such a modification upon Dr. Hodge, given the relative economic positions of these parties. To do otherwise would be contrary to the policy of this Commonwealth, which is to give primary consideration to the welfare of the *family* and to mitigate the harm to spouses *and their children* caused by the legal dissolution of a marriage. 23 P.S. § 102(a)(3) and (4), *supra* note 4 (emphasis added).

Reading this statute as a whole, it seems obvious to me that the legislature intended to give the trial courts of this Commonwealth broad discretion in tailoring alimony awards and property distribution to the myriad fact situations which modern marriage presents. That being so, it seems to me the absence of assets necessarily affects the alimony award if economic justice is to be done. The ruling that a medical license is not property affects this wife's right to alimony. Under all the circumstances of this case, I am at a loss to see how the trial court abused the broad discretion the legislature gave it in awarding fourteen years of alimony to Mrs. Hodge.

Accordingly, I would affirm the order of Superior Court in its entirety.

Mr. Justice PAPADAKOS joins in this concurring and dissenting opinion.

LARSEN, Justice, dissenting.

I take thee to be my wedded wife; and I do promise and covenant, before God and these witnesses; to be thy loving and faithful husband in plenty and in want; in joy

and in sorrow; in sickness and in health; as long as we both shall live.

Reciting these vows on July 15, 1967, appellant, Arthur J. Hodge, married a reluctant bride, appellee Patricia Hodge. Appellant had only recently begun his medical training when he made his proposal of marriage, and appellee knew from her experience as a clinical instructor in a hospital that divorce is a plague among physicians upon completion of their education. Appellant assured members of his own family and his in-laws that a goal of his medical education was to provide his wife and family with a decent life. Yet, in August of 1977, with the ink still wet on his license to practice medicine in the Commonwealth, appellant left his wife and three children (then aged 11 months, 2, and 8) to begin his lucrative career as a physician to live in the company of a nurse he had met during his residency program in internal medicine. So much for the promise to be a loving and faithful husband *in plenty* and in want.

No marital assets of any value were accumulated during the couple's ten years together, as all their income and savings and gifts from both sets of parents were expended on the attainment of appellant's medical degree. The couple resided at six different locations, including several years at a substantially lowered standard of living in Guadalajara, Mexico, where appellant attended medical school. Appellee dutifully traveled at appellant's beck and call and worked to support the family while she raised their children.

Appellee, who is unemployed, lives with her children in rental property which is in poor condition; she has problems with the circulation in her legs, and she must undergo two more years of full-time education in her field of medical technology to be employable at a living wage in her community. Appellee lives with his new wife in a home valued at $72,000 in 1982, and is employed in a medical practice which grosses $300,000 a year.

Mr. Justice Zappala correctly observes that "the Divorce Code was adopted with the intent to 'effectuate economic justice', 23 P.S. § 102(a)(6)." Maj. op. at 270. The refusal

of the majority, however, to recognize as a marital asset the increased earning capacity made possible by a medical degree earned during the marriage makes a mockery of justice in this case and is the antithesis of enlightened jurisprudence.

Although I agree with the majority that a professional degree or license is not property, I disagree that the proceeds generated by that degree are not. Certainly, proceeds are inheritable, assignable, salable, transferrable, conveyable, and pledgeable. That the proceeds were not in existence during the time of coverture is not fatal to our designation of them as marital assets subject to equitable distribution, where, as here, both spouses have significantly contributed toward the potential to attain those proceeds.[1]

Marriage is more than a mere economic partnership, yet, when a marriage fails, it is beneficial for society to subject the marital relationship to a strict economic accounting. In this way, we are best able to "insure a fair and just determination and settlement of [the spouses'] property rights." 23 P.S. § 102(a)(6). With this principle in mind, we must analyze marriage as a joint economic venture. A spouse lends money without a credit check or loan agreement, secure in the knowledge that repayment will be made. A supporting spouse expects that any contribution made to the student spouse's education or career potential is an investment in the future—a future in which every family member will benefit. No prudent business partner would expend time, effort and money without the promise of a return on his or her investment. Similarly, a spouse may defer realization of personal career goals or make economic

---

1. The proceeds which will be generated by a professional degree or license are similar in many respects to retirement or pension rights, which, although accumulated during the marriage, are not realized income until some time in the future. Pension rights are recognized as a form of marital property in this jurisdiction. *See, e.g., Flynn v. Flynn,* 341 Pa.Super. 76, 83, 491 A.2d 156, 160 (1985) where Superior Court cogently observed:

> Since a pension benefit is an economic resource acquired with funds that would otherwise have been utilized by the parties during their marriage to purchase other assets, it constitutes marital property.

contributions and sacrifices in order that his or her "partner" will attain a level of proficiency, evidenced by a degree or license, that will make possible the future rewards to both of the enhanced earnings of one.

The supporting spouse invests in the potential for increase in future earning capacity, much as a business partner would invest in the development of a new idea. When the idea comes into existence, the investing partner owns a piece of it and is entitled to share in whatever profit it generates. The potential to generate profits exists from the moment the idea is created. The owner's interest in that potential is recognized by the law in many ways. Trade secret law, licensing and franchise agreements extend legal recognition and protection to the intangible asset that exists as a bare potential for future profit.

We must likewise protect the property interest of the spouse who, because of a divorce, will not enjoy the future benefits of his or her contributions (can include sacrifices) in the "company" of the spouse in whose name the degree or license is conferred. The supporting spouse has provided more than financial aid in enhancing the value of this marital property, and I would not limit a property award to the value of the financial contribution. I would therefore reverse Superior Court and remand to the trial court to evaluate appellee's contribution to her husband's potential for increased earning capacity and award appellee a like share of the proceeds generated by the degree which was conferred with appellee's aid. I would further impose a constructive trust upon the proceeds with appellant as trustee. The trust device is entirely necessary, for the trustee may then not, in spite, attempt to reduce the proceeds to the detriment of the other.

I agree with Judge Wickersham, *Hodge v. Hodge*, 337 Pa.Super. 151, 486 A.2d 951 (1984) (concurring and dissenting), that an intangible asset in the guise of increased earning capacity is a property *interest* under the Divorce Code and fully subject to equitable distribution.

In light of my view to equitably distribute the proceeds of appellant's medical degree, I would also remand for a new alimony hearing and direct the lower court to apply the relevant law set forth in Mr. Justice Hutchinson's concurring and dissenting opinion herein.