569 A.2d 357

**Dorothy KLUDO, Appellant,**

v.

**Ronald G. KLUDO, Appellee.**

Superior Court of Pennsylvania.

Argued Oct. 25, 1989.

Filed Jan. 30, 1990.

Dennis P. Zawacki, Pittsburgh, for appellant.

C. Gus Kwidis, Beaver, for appellee.

Before DEL SOLE, BECK and MONTGOMERY, JJ.

DEL SOLE, Judge:

Dorothy Kludo, Appellant, and Ronald Kludo, Appellee, were divorced in March, 1987 after twenty-five years of marriage. The parties agreed to a consent decree which was entered in December, 1987, leaving the question of alimony to be decided by the trial court. Mrs. Kludo appeals from the trial court's final decree raising the principal question of whether 501(c) of the Divorce Code as amended, effective February 12, 1988, should apply to her alimony award even though the decree in divorce pre-dated the amendment. We hold that the amended statute does apply.

On April 15, 1988, the trial court awarded Wife $1,500.00 per month for a period of five years beginning January 1, 1988. After that, Husband was to pay Wife permanent alimony of $1,000.00 per month until Wife was 59 and ½ years of age or until she was able to draw from the pension fund with maximum tax advantages. The trial court arrived at the $1,500.00 per month figure by accepting Wife's calculation of her monthly expenses as $2,774.00. The trial

court then took into account the interest it expected Wife to receive from the $200,000 in liquid or liquidatable assets available to her. The interest amount was set at 8% per annum of the $200,000 or $1,333.00 per month. Subtracting the $1,333 in interest from the necessary expenses of Wife, the trial court decided upon an alimony award of $1,500 per month for the first five years.

After hearing arguments on post-trial motions, the trial court modified its award to Wife. The court concluded that it had mistakenly used Section 501(c) of the Divorce Code (23 P.S. § 501) as amended, Act No. 1988-13, § 501, effective February 12, 1988 instead of the Section 501(c) which was in effect before the 1988 amendments.[1] The trial court reasoned that because the divorce was granted to the Kludos on March 2, 1987, and all other claims, except Wife's claim for permanent alimony, were disposed of in a consent decree dated December 24, 1987, the pre-1988 Section 501 was the appropriate Section to use. The trial court then modified the Wife's alimony award to $1,500 per month for three years and $500 per month until she is 59½ years old. The trial court described the difference between the pre-1988 Section 501 and the amended Section 501 as follows:

A principal thrust of the 1988 amendment to Section 501 was largely to eliminate the rehabilitative aspect of permanent alimony. This was a significant change. Under Section 501(c) (which was deleted entirely by the 1988 amendments), in awarding permanent alimony a court

1. The amended Section 501(c) reads
The court in ordering alimony shall determine the duration of the order, which may be for a definite or an indefinite period of time which is reasonable under the circumstances.
The pre-1988 Section 501(c) read
Unless the ability of the party seeking the alimony to provide for his or her reasonable needs through employment is substantially diminished by reason of age, physical, mental or emotional condition, custody of minor children, or other compelling impediment to gainful employment, the court in ordering alimony shall limit the duration of the order to a period of time which is reasonable for the purpose of allowing the party seeking alimony to meet his or her reasonable needs by:
(1) obtaining appropriate employment; or
(2) developing an appropriate employable skill.

was bound to 'limit the duration of the order to a period of time which is reasonable for the purpose of allowing the party seeking alimony to meet his or her reasonable needs by: (1) obtaining appropriate employment; or (2) developing an appropriate employable skill.' There is little if any dispute that (Wife) worked outside the home before and during the marriage; with further education and some on-the-job training she is capable of obtaining employment requiring significant skills.

.   .   .   .   .

Aware as we are of the rehabilitative aspect of the previous Section 501, and of the substantial distribution of marital property which (Wife) has received, we are nonetheless constrained to return to certain factors which guided us in the entry of our decree nisi. (Wife) has made an enormous contribution to (Husband's) education and training and his increased earning power. She worked outside the home (and as a typist in it), while the parties' children were young, to help pay for (Husband's) osteopathic training. Throughout the marriage she was a homemaker and, in the early days of (Husband's) practice, she worked in his office. Then, when (Husband's) practice began to flourish, he left (Wife) for another woman. Wife will now be deprived of the benefits of (Husband's) greatly enhanced earning power which she has done so much to create.

.   .   .   .   .

We feel that to entirely terminate (Wife's) alimony payments before she reaches the age of 59½, and can begin to realize income from the retirement fund which she received under the equitable distribution decree, would be 'mechanistic' and an 'unjust or unreasonable decision.' It would simply be wrong to deny (Wife) any participation whatever in (Husband's) increased earning power during those years.

Wife argues that the trial court erred when it applied the pre–1988 Section 501(c) instead of the amended Section 501(c). We agree and note that this is the first time this question has come before this court. We hold that the

appropriate Section 501 to be used is the one in effect when the *initial* alimony award is made.

When interpreting a statute, we are required to "give effect to all its provisions." 1 Pa.C.S.A. § 1921(a). When interpreting the Divorce Code, we must do what is necessary to "effectuate economic justice between the parties." 23 Pa.S.A. § 102(a)(6) in *Pacella v. Pacella,* 342 Pa.Super. 178, 186–187, 492 A.2d 707, 713 (1985). In *Gordon v. Gordon,* 293 Pa.Super. 491, 439 A.2d 683 (1981), aff'd 498 Pa. 570, 449 A.2d 1378 (1982), husband began a divorce action against wife on January 2, 1979. The new Divorce Code came into effect on July 1, 1980. On July 29, 1980, before a final decree was entered, wife filed an application that the action proceed under the Divorce Code. (See 23 Pa.S.A. § 103, below). The trial court denied the application and wife appealed. This court ruled that the trial court, before denying the application, should have asked whether granting it would have furthered the policy of the Commonwealth. 293 Pa.Super. at 496, 439 A.2d 683.

The policy of the Commonwealth is codified in 23 Pa.S.A. § 102.[2] Construing this statute, this court in *Gordon* concluded that the Commonwealth's policy would be best served by granting the wife's application since this would allow the achievement of the General Assembly's most recent objectives in regards to the Divorce Code.

**2.** *Legislative Findings and Intent*
(a) The family is the basic unit in society and the protection and preservation of the family is of paramount concern. Therefore, it is hereby declared to be the policy of the Commonwealth of Pennsylvania to:
(1) Make the law for legal dissolution of marriage effective for dealing with the realities of matrimonial experience.
(2) Encourage and effect reconciliation and settlement of differences between spouses, especially where children are involved.
(3) Give primary consideration to the welfare of the family rather than the vindication of private rights or the punishment of matrimonial wrongs.
(4) Mitigate the harm to the spouses and their children caused by the legal dissolution of the marriage.
(5) Seek causes rather than symptoms of family disintegration and cooperate with and utilize the resources available to deal with family problems.

The same rationale holds true in our present case. Although a divorce decree was granted to the Kludos, the divorce proceedings were bifurcated. Part of the policy behind bifurcation is that it allows a divorce decree to become final, and thus appealable, even though economic issues remain unresolved. *Mackey v. Mackey*, 376 Pa.Super. 146, 545 A.2d 362 (1988). There is no mandate, however, from the General Assembly that requires us to peg the date of the divorce decree as the date to use when applying Section 501. It can be years after a divorce decree is entered before an alimony award is made. The present case shows how the General Assembly's policy towards alimony can change between the date of the divorce decree and the date of an alimony award. We hold that the economic justice intended by the General Assembly can best be effectuated between the parties involved by applying the statute in effect when the initial alimony award is made.

Section 103 of the Divorce Code does not mandate a different result. Section 103 defines the Construction to be given to the Divorce Code and reads

The provisions of this act, so far as they are the same as those of existing laws, are intended as a continuation of such laws and not as new enactments. The provisions of this act shall apply to all cases, whether the cause for divorce or annulment arose prior or subsequent to enactment of this act. The provisions of this act shall not affect any suit or action pending, but the same may be proceeded with and concluded under the laws in existence when such suit or action was instituted not withstanding the repeal of such laws by this act, or upon application granted under the provisions of this act. The provisions of this act shall not apply to any case in which a decree has been rendered prior to the effective date of the act.

(6) Effectuate economic justice between parties who are divorced or separated and grant or withhold alimony according to the actual need and ability to pay of the parties and insure a fair and just determination and settlement of their property rights.
(b) The objectives set forth in subsection (a) shall be considered in construing provisions of this act and shall be regarded as expressing the legislative intent.

This act shall not affect any marital agreement executed prior to the effective date of this act or any amendment or modification thereto.

23 P.S. § 103 (1980, April 2, P.L. 63, No. 26, § 103) The effective date of the Act as referred to in Section 103 is July 1, 1980. The purpose of this Section was to provide for the disposition of divorce actions pending when the Act was passed. Also, it clearly establishes that prior divorces would not be affected by this new change allowing for alimony and equitable distribution of property. Section 103 was not meant to prohibit amendments to the 1980 Divorce Code from applying to initial orders granted after the effective date of the amendment.

We note that the trial court opinion, excerpted above, makes the correct distinction between the pre–1988 Section 501(c) and the amended Section 501(c). The pre–1988 Section 501(c) does not allow for the granting of permanent alimony. The trial court, however, while saying that it is construing the pre–1988 Section 501(c), makes an alimony award to wife which seems to include permanent alimony. Because this is unclear, we vacate the award and remand to the trial court so that it can make an alimony award applying Section 501(c) as amended.

Decree vacated and remanded.