**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| ERIC L. BITTNER | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| LISA D. SMITH | |
| Appellee | No. 513 WDA 2016 |

Appeal from the Order March 9, 2016
In the Court of Common Pleas of Somerset County
Domestic Relations at No(s): 341 Domestic 2014

| | |
|---|---|
| LISA D. SMITH | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| ERIC L. BITTNER | |
| Appellant | No. 514 WDA 2016 |

Appeal from the Order March 9, 2016
In the Court of Common Pleas of Somerset County
Domestic Relations at No(s): 349 Domestic 2014, Pacses No 7461150

BEFORE:  FORD ELLIOTT, P.J.E., LAZARUS, J., and JENKINS, J.

MEMORANDUM BY JENKINS, J:                     **FILED OCTOBER 24, 2016**

Eric Bittner ("Father") appeals at the above caption numbers from an order sustaining the exceptions of Lisa Smith ("Mother") to a support order and directing Father to pay monthly child support of $178.37 to Mother. Although we agree with most of the trial court's analysis, we disagree with

1

its conclusion that Father received income from utility payments made by a corporation in which Father is the majority shareholder. Accordingly, we reverse and remand for recalculation of Father's support.

Father and Mother married in 1998 and divorced in 2004. Two children were born during the marriage, both of whom are still minors. The parties stipulate that they share equal physical and legal custody of the children.

Mother is employed by the federal Bureau of Prisons, and Father is employed as a police officer by the City of Brunswick, Maryland. Father also is majority owner of Alice M. Bittner, Inc., ("Alice, Inc."), which runs one bus route for the Board of Education of Garrett County, Maryland.

On December 10, 2014, Father filed a complaint for support at 341 Domestic 2014. On December 18, 2014, Mother filed a cross-complaint for support at 349 Domestic 2014.

On February 4, 2015, pursuant to Pa.R.Civ.P. 1910.12, a hearing officer convened a conference on the cross-complaints. On February 6, 2015, the court dismissed Mother's action at 349 Domestic 2014 without prejudice. On February 11, 2015, based on the hearing officer's summary, the court entered an interim order in Father's action at 341 Domestic 2014 directing Mother to pay $319.00 per month in child support and $64.00 per month in arrears for a total of $383.00 per month. The effective date of the order was December 10, 2014.

Mother moved for an evidentiary hearing at both 341 and 349 Domestic 2014. On March 31, 2015, a hearing officer held a *de novo* hearing at both caption numbers.

On May 14, 2015, the hearing officer filed a report in Father's action at 341 Domestic 2014 recommending that Mother pay $262.21 per month in support with an additional $37.79 per month for arrears, for a total of $300.00 per month; that Father pay the first $250.00 per child per year for medical bills; and that thereafter, Mother is responsible for 56% of unreimbursed medical bills and Father is responsible for the remaining 44%. The hearing officer recommended that the court terminate Mother's action at 349 Domestic 2014 and merge it into 341 Domestic 2014.

On the same date, May 14, 2015, the hearing officer filed a report in Mother's action at 349 Domestic 2014 incorporating his findings at 341 Domestic 2014 and recommending that 349 Domestic 2014 be terminated.

Later on the same date, the court decreed that Mother's action at 349 Domestic 2014 was "dismissed without prejudice due to the recommendations of the hearing officer. The order of court dated 2/6/2015 [at 349 Domestic 2014] shall become the final order." Notably, the February 6, 2015 order was designated as a "final order" even though it only dismissed 349 Domestic 2014 without prejudice.

On May 27, 2015, the court entered an order in Father's action at 341 Domestic 2014 that followed the hearing officer's recommendations as to

- 3 -

Mother's total obligations of $300.00 per month and as to the parties' responsibilities for medical bills.

On June 15, 2015, Mother filed exceptions to the court's order at 341 Domestic 2014.

On March 9, 2016, following oral argument, the court entered a memorandum and order at 341 Domestic 2014 sustaining Mother's exceptions and directing that (1) Father's monthly income was $3,895.96; (2) Mother's monthly income was $3,539.22; (3) Father's support obligation was $178.37, with arrearages as appropriate; (4) Mother shall continue to provide health insurance coverage for the children; and (5) the interim orders issued on February 11, 2015 and May 26, 2015 were vacated. Stated more simply, the court vacated the prior orders directing Mother to pay child support to Father and ordered Father to pay child support to Mother.

On April 7, 2016, Father filed notices of appeal to this Court at both 341 and 349 Domestic 2014. Both Father and the trial court complied with Pa.R.A.P. 1925.

Father raises five issues in this appeal, which we re-order for the sake of disposition:

> 1. Is the order in [] 349 Domestic 2015 dated May 14, 2015 a final order to which no appeal was filed?
>
> 2. Did the lower court erroneously classify valid corporate expenditures as personal income of Father and thereby abuse its discretion and commit an error of law?
>
> 3. Did the lower court abuse its discretion and commit an error of law by attributing as income funds not available to, or

- 4 -

received by, Father and which [the Bittner corporation] would have to borrow to pay?

4. Did the lower court commit an error of law when it did not dismiss Mother's exceptions which improperly contained allegations of fact and argument instead of setting forth valid objections precisely and without discussion?

5. Did the lower court abuse its discretion and commit an error of law when it considered the evidence *de novo*?

Brief For Father, at 4-5.

Pa.R.Civ.P. 1910.12 provides the procedure used in this support proceeding. In relevant part, it states:

> (b) (1) At the conclusion of a conference attended by both parties, if an agreement for support has not been reached, and the conference and hearing are not scheduled on the same day, the court, without hearing the parties, shall enter an interim order calculated in accordance with the guidelines … and the parties shall be given notice of the date, time and place of a hearing. A record hearing shall be conducted by a hearing officer who must be a lawyer…
>
> (d) The hearing officer shall receive evidence, hear argument and … file with the court a report containing a recommendation with respect to the entry of an order of support. The report may be in narrative form stating the reasons for the recommendation and shall include a proposed order … stating:
>
> > (1) the amount of support calculated in accordance with the guidelines;
> > (2) by and for whom it shall be paid; and
> > (3) the effective date of the order.
>
> (e) The court, without hearing the parties, shall enter an interim order consistent with the proposed order of the hearing officer. Each party shall be provided, either in person at the time of the hearing or by mail, with a copy of the interim order and written notice that any party may, within twenty days after the date of receipt or the date of mailing of the order, whichever occurs

first, file with the domestic relations section written exceptions to the report of the hearing officer and interim order.

(f) Within twenty days after the date of receipt or the date of mailing of the report by the hearing officer, whichever occurs first, any party may file exceptions to the report or any part thereof, to rulings on objections to evidence, to statements or findings of facts, to conclusions of law, or to any other matters occurring during the hearing …

(h) If exceptions are filed, the interim order shall continue in effect. The court shall hear argument on the exceptions and enter an appropriate final order … No motion for post-trial relief may be filed to the final order.

*Id*.

Although the hearing officer's report is entitled to great weight, it is not binding on the trial court, for the final responsibility of determining child support rests with the court. *McNaughton v. McNaughton*, 603 A.2d 646, 648 (Pa.Super.1992). Even if the hearing officer accepts the parties' testimony, the trial court remains free to accept or reject the parties' testimony. *Thomson v. Thomson*, 519 A.2d 483, 488 (Pa.Super.1986). This Court's review is limited to determining whether the trial court's decision was an abuse of discretion. *McNaughton*, 603 A.2d at 648.

Father first argues that the May 14, 2015 order in 349 Domestic 2014 was a "final order" that required Mother to file exceptions at this caption number, and since Mother only filed exceptions at 341 Domestic 2014, she waived all issues presently in dispute. We disagree.

The court's May 14, 2015 order dismissed 349 Domestic 2014 "without prejudice" based on the "recommendations of the hearing officer." This

- 6 -

language demonstrates the court's decision to follow the hearing officer's recommendation to merge 349 Domestic 2014 into 341 Domestic 2014.[1] Following merger, only one case remained as the repository for all issues between the parties – 341 Domestic 2014 – so it was only necessary for Mother to file exceptions to the support order in 341 Domestic 2014. She did just that by filing timely exceptions on June 15, 2015.

We consider Father's second and third arguments on appeal together, for they raise the same objection. Father contends that the trial court abused its discretion by determining that Father received additional income for support purposes from four items that Alice, Inc. listed as deductions on its tax return: utilities, rent, office and auto expenses.

The trial court properly determined that Alice, Inc.'s tax deductions for rent, office expenses and auto expenses constituted additional income to Father. We disagree, however, with the court's decision that Alice, Inc.'s payment of utilities constituted additional income to Father.

In its March 9, 2016 memorandum, the trial court explained its support calculations as follows:

---

[1] The May 14, 2015 order states incorrectly that the February 6, 2015 order is the "final order" in 349 Domestic 2014. The February 6, 2015 order was not a "final" order, because: (1) it dismissed 349 Domestic 2014 *without prejudice*, **see** Pa.R.A.P. 341(b) (final order "disposes of all claims and all parties"); and (2) the May 14, 2015 order occurred later in time and superseded the February 6, 2015 order by providing an additional remedy, the merger of 349 Domestic 2014 into 341 Domestic 2014.

Alice, Inc. is an Internal Revenue Code, Subchapter C corporation which [] contract[s] to provide bus services to the Garrett County Board of Education. Father owns one bus and runs one bus route for Garrett County.

Father owns 80% of Alice, Inc.'s stock, the other 20% being treasury stock. [Under Maryland law, Alice, Inc.'s state of incorporation,] [t]reasury stock is 'stock which is authorized and issued but not outstanding.' *Valerino v. Little*, 490 A.2d 756, 761 (Md. Ct. Spec. App. 1985). In other words, Father owns 80% of Alice, Inc.'s stock, and Alice, Inc. itself owns the other 20%.

Father, as President of the corporation, is [its] only officer. The company has three employees: one bus driver and two bus aides. Father runs Alice, Inc. out of his house. He sometimes uses his personal Visa credit card to purchase parts for the bus[,] and Alice, Inc. reimburses him. Father also allows the business to use his own personal vehicle. As Father operates the bus out of his home, Alice, Inc. also pays him sums for, among other things, electricity the bus uses while stored at Father's home and 'the rent', which Father denies constitutes income.

Alice, Inc. has allegedly paid no dividends or other distributions to Father because '[t]here's no funds [sic].' Father claims Alice, Inc. is unprofitable, i.e., that it loses money, however, he maintains it '[t]o carry it on for my children just like my grandfather had it for someone in the family to pass down.' As the testimony illustrates:

> Q: You want to pass down an unprofitable company?
> A: Yes, sir.
> Q: Why would - if you're losing money on it every year, why wouldn't you shut it down and save yourself money?
> A: Because it's more about - it's been in the family and it's what I've done growing up and it's what I continue to do.

We believe that because Father is the sole (apart from Alice, Inc. itself) shareholder of the corporation; [because] he co-mingles corporate money with his personal credit card; [because] he operates the business out of his own home; and [because] he pays himself rents, it is appropriate in this instance to pierce the corporate veil and attribute the income of the corporation to Father. *Commonwealth ex rel. Maier v. Maier*, 418 A.2d

558, 560-61 (Pa.Super.1980) (holding, in context of spousal support, 'because appellant [defendant-husband] is the sole stockholder of [two companies] and determines his own salary, this is an appropriate case for piercing the corporate veil and considering the income of those corporations in determining appellant's earning capacity'); *see also Heisey v. Heisey*, 633 A.2d 211, 213 (Pa.Super.1993) (stating, vis-a-vis child and spousal support, 'normally, the court should pierce the corporate veil to determine if a spouse's ability to pay support is enhanced by advantages owing to ownership or membership in a corporation') (citing *Pacella v. Pacella*, 492 A.2d 707 (Pa.Super.1985)).

We must examine then the corporate income tax return of Alice, Inc. to determine the corporate income that is available to Father for purposes of support. This inquiry requires us to train our focus on corporate cash flow; not just the income calculations made for purposes of determining corporate taxation. In other words,

> income must reflect actual available financial resources and not the often times fictional financial picture which develops as the result of depreciation deductions taken against... income as permitted by the federal income tax laws. Otherwise put, 'cash flow' ought to be considered and not federally taxed income.

*Heisey*, 633 A.2d at 212, citing *McAuliffe v. McAuliffe*, 613 A.2d 20, 22 (Pa.Super.1992). Said otherwise, depreciation and depletion expenses 'should be deducted from gross income only when they reflect an actual reduction in the personal income of the party claiming the deductions.' *Labar v. Labar*, 731 A.2d 1252, 1255 (Pa.1999) (internal citations omitted). Our directive is clear: we examine Alice, Inc.'s tax return, and wherever a deduction is not linked to an actual cash outlay, we must factor it back into Alice, Inc.'s income.

We note, first of all, that Father submitted no supporting documentation apart from Alice, Inc.'s tax return. According to the 2014 federal tax return, Alice, Inc. received gross receipts of $84,498. However, after figuring in all of its deductions, the corporation ended up claiming a taxable income of -$57,864. Father indicated that from the corporate receipts, the corporation paid him $7,011 in rents, which amount must be

added back to corporate income. The corporation also paid Father $1,630 for 'office' and $2,251 in utilities. Keeping in mind, again, that Father operates this business out of his home, these amounts for office and utility expenses too must be added back to the corporate income.

The corporation also claimed $3,574 in 'auto expenses.' There was no evidence to explain what these 'auto expenses' were for, but they are listed separately from fuel, contract labor, insurance, supplies, repairs and maintenance, taxes and licenses, and depreciation relating to the purchase of a new bus. Because no evidence has been provided to explain what these 'auto expenses' were, and eliminating the other categories leaves us unable to imagine what these expenses could have been for, we must add this amount back to corporate income.

Because of the specificity of the remaining deductions,[2] we are satisfied that they approximate actual cash expenditures which were necessary for the continued operation and smooth running of the business. *Labar*, 731 A.2d at 1257.

By adding the foregoing amounts back to corporate income, and then attributing those amounts to Father, Father's monthly income is increased from $2,667.97 per month to $3,895.96 per month.

Memorandum, at 5-8 (citations to record omitted).

In support cases, where tax returns do not reflect actual earnings, we have approved various methods to calculate earnings figures that accurately mirror a party's real wealth. *See, e.g., Maier*, 418 A.2d at 560-61 (where supporting spouse is sole stockholder of corporation and determines his own salary, court may pierce corporate veil and use corporate income as basis for

---

[2] These deductions included, *inter alia,* Father's business expenses for fuel, contract labor, insurance, supplies, repairs and maintenance, and taxes and licenses.

determining earning capacity); ***Commonwealth v. Miller***, 198 A.2d 373, 375 (Pa.Super.1964) (where supporting spouse is self-employed, net income, as it appears on income tax forms, is not "infallible" measure of real wealth; although certain items "may have been proper deductions under the income tax law … consideration must be given in a support case to those deductible expenditures which improve the defendant's standard of living"; court properly added back portion of depreciation deduction in calculating amount of support owed); ***Commonwealth ex rel. Gutzeit v. Gutzeit***, 189 A.2d 324, 326-27 (Pa.Super.1963) (in determining supporting spouse's earning capacity, court should consider not only salary paid by wholly owned corporation but all prerequisites provided by corporation).

Father asserts that his corporation's tax return accurately depicts his level of income, but the trial court concluded that four deductions on the return -- rent, office space, auto expenses, and utilities – did not reflect actual diminution of Father's income. We review each deduction *seriatim*.

*Rent*: Alice, Inc. took a deduction for paying monthly rent to Father for the school bus. Because Father received the rental payments, they constituted income to Father for support purposes.

*Office*: Alice, Inc. paid Father for the use of an office in Father's residence. Like rent, this constitutes income to Father for support purposes.

*Auto expenses*: In the trial court's opinion, Father's failure to itemize $3,574.00 in auto expenses indicated that Father double-counted these

expenses by including them in one or more other categories (e.g., fuel, contract labor, insurance, supplies, repairs and maintenance, taxes and licenses, and depreciation relating to the purchase of a new bus). We conclude that this was a proper exercise of the court's discretion. Experience teaches that auto expenses are relatively simple to itemize, so Father's failure to take this step casts doubt on the veracity of this rather substantial deduction.

*Utilities*: Father claimed that he used utilities in his house both for residential purposes and as a source of electricity for his school bus, which he parked in the driveway. Father testified he paid for all utilities, whether they were for residential purposes or for the bus. N.T., 3/31/15, at 44-45 (testimony before hearing officer). No evidence conflicted with this testimony.

We see a distinction between Alice, Inc.'s payment for utilities and Alice, Inc.'s aforementioned payments for rent and office expenses. Alice, Inc.'s payments to Father for rent and office expenses were income to Father, because they went into his wallet. Alice, Inc.'s payment for utilities was not income to Father, because it merely reimbursed him for his own out-of-pocket expenses. Therefore, we direct the trial court to recalculate Father's child support obligation by excluding Alice, Inc.'s utility payment from Father's income.

In his fourth argument on appeal, Father complains that Mother improperly included argument and "rambling … allegations" in her exceptions to the May 27, 2015 order. Brief For Father, at 17. Father has waived this argument by failing to specify the argument or allegations in his brief. *Moranko v. Downs Racing LP*, 118 A.3d 1111, 1117 n. 3 (Pa.Super.2015) (failure to develop issue in meaningful way in appellate brief constitutes waiver).

In his final issue, Father argues that the lower court abused its discretion by considering the evidence *de novo*. We pointed out above that *de novo* review is permissible, for even if the hearing officer accepts the parties' testimony, the trial court remains free to accept or reject the parties' testimony. *Thomson*, 519 A.2d at 488.

For these reasons, we affirm the trial court's order in part and reverse in part for further proceedings limited to determination of the amount of utility payments that Father made and the corresponding adjustment to his support payments.

Affirmed in part and reversed in part; case remanded for proceedings consistent with this memorandum. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>10/24/2016</u>